## City of Louisville v. Coulter.

(Decided October 19, 1917.)

### Appeal from Jefferson Circuit Court (Criminal Division).

1. Constitutional Law—Police Power—Regulation of Plumbing.—The legislature, under the police power, is authorized to regulate the business of plumbing, when it is in the opinion of the legislature

necessary to be done, for the protection of the health of the citizens.

2. Constitutional Law—Police Power—Regulation of Occupation or Calling.—Where the legislature is authorized, under the police power, to make laws regulating the conduct of an occupation, profession or calling, it may do so, if the regulations prescribed are reasonable and not arbitrary and oppressive.

3. Constitutional Law—Police Power—Regulation of Occupation.—While the right is secured to every citizen to engage in any lawful occupation he may elect, his right to follow such occupation is subordinate to the right of the State, for the protection of the health, morals, lives and comfort of the people, generally, to regulate it by reasonable regulations, and to impose upon it reasonable restrictions.

4. Constitutional Law—Police Power—Regulation of Occupation.—When the legislature enacts a law for the regulation of an occupation, profession or calling, under the police power, the only province of the judiciary is to determine, whether the regulation is reasonable and pertinent to the end to be attained.

5. Constitutional Law—Police Power—Public Health.—The legislature, when it deems it necessary for the protection of the public health, may enact laws, which apply to persons of a certain class, only, and who reside in certain places where similar conditions exist, and its enactments will be valid, unless the selection of the class is arbitrary and not based upon a reasonable distinction between the class selected and other classes, and the regulation must apply to all of the same class, alike.

6. Statutes—Subjects and Titles of Acts.—If all the provisions of an act, which relate to the same subject, are naturally connected and are not foreign to the subject expressed in the title, the statute sufficiently complies with section 51, of the constitution.

ARTHUR M. WALLACE, WILLIAM B. THOMAS and WILLIAM M. DUFFY for appellant.

KOHN, BINGHAM, SLOSS & SPINDLE for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

This appeal involves, only, the validity of an act of the General Assembly, which became a law March 27, 1914, and is now section 3037f, Kentucky Statutes. It consists of fifteen subsections. The title of the act is "An act to secure the registration of plumbers and the supervision and inspection of plumbing and drainage in cities of the first class." The first section of the act is as follows:

"Any person now or hereafter engaged in or working at the business of a plumber in cities of the first class of this Commonwealth, either as a journeyman plumber or as a master plumber working in the capacity of a jour-

neyman plumber, or any person installing or placing any plumbing fixtures or materials, shall first receive a certificate, in accordance with the provisions of this act."

Section 3, of the act, provides that a board of examiners shall be appointed in each city of the first class, consisting of four members, by the mayor and approved by the council, and section 2 provides, that within ninety days after the act becomes in force, all persons engaged in or working at the business of plumbing, either as journeyman plumbers or as master plumbers, working in the capacity of journeyman plumbers, or any persons installing or placing plumbing fixtures or materials, shall make application to the board of examiners and undergo such an examination as to his qualifications and competency as a plumber, as the board may prescribe, but the examination shall be of such character as to thoroughly test the applicant's ability for plumbing, both practically and theoretically. Section 5 provides that the board shall fix the time for the examination of the applicants, and "said board shall examine all applicants as to their knowledge of plumbing, house drainage and plumbing ventilation, and if satisfied of the competency of such applicant, shall thereupon issue a certificate to such applicant, authorizing him to work at the business of plumbing, and to place and install plumbing fixtures and materials, and it shall be unlawful for any person to work in the capacity of a journeyman plumber or to install plumbing fixtures or materials, unless he shall have first obtained a certificate of competency." Other subsections of the act direct the above mentioned board to formulate a code of rules regulating the work of plumbing and drainage and materials and workmanship and manner of executing the work connected with plumbing and drainage, and to submit the regulations thus formulated to the council of the city, which shall approve or reject the rules, and in the event of a rejection, the council shall prepare and adopt the necessary regulations upon that subject. Other subsections of the act provide for the appointment of inspectors, whose duty it shall be to inspect all plumbing and drainage done, and to enforce the provisions of the act. Subsection 9 provides, that all plumbing and drainage, of buildings in the city, shall be done in accordance with the provisions of the act and the rules and regulations adopted by the board or city council, as provided in the act. Section 11 defines the word plumbing, as used in the statute, to in-

clude all work of every character connected with the installation or repair of any plumbing fixtures or material connected with the drainage of buildings or property, and all work requiring connections with street sewers or water mains, or with plumbing ventilation. A further subsection provides a penalty for any violation of the act.

It is insisted that the act is void, because that it is unconstitutional, in that:

(1) The business of plumbing does not bear any such relation to the public health or safety as to authorize the legislature, as a police measure, to regulate it.

(2) If the business of plumbing is subject to regulation, under the police power of the state, the act is nevertheless unconstitutional and void, because (a) the legislature has adopted an arbitrary and unreasonable basis of classification in restricting the application of the act to cities of the first class; (b) the discrimination made by the act between master plumbers and journeyman plumbers is unreasonable and arbitrary; (c) the act is void, because it contains no provision, which exempts from its operation, those, who were plumbers at the time the act was enacted or those who have been in the business for a number of years; (d) the act is violative of section 51, of the constitution.

Touching the contention, that the legislative authority is not authorized to make any law providing for the regulation of the business of plumbing, it may be said, that it is elemental, that any citizen has a right, under our constitution, to engage in any lawful business or occupation or to pursue any calling or profession, which he may elect, and that he can use such right, as a means of livelihood for himself and family. This right is secured to him beyond cavil; but, where it is necessary for the benefit of society, generally, that the citizen should give up some degree of his freedom of action, the state government has authority to put upon the citizen's right to engage in an occupation or to follow a calling or profession such regulations as may be reasonable. The power and right of the legislature to enact laws for the protection of health, lives and comfort of the citizens and the protection of their property is what is denominated an exercise of the police powers of the state, which simply means the power to put such regulations and restrictions upon the rights of individuals as may be necessary, in a practical way, for the general welfare of all.

While there is some divergence of opinion, the weight of authority is to the effect, that the legislature has the power to make laws prescribing reasonable regulations for the control of the business of plumbing, in centers of population, upon the ground, that defective plumbing and plumbing unskilfully executed, and plumbing not done upon proper scientific principles greatly endangers the health of the public in such localities, where the escape of sewer gas and other evils, arising from plumbing faultily done, are conducive to the creation and spread of epidemic diseases of a virulent and dangerous character. Regulations for the protection of the public against the evil consequences arising from the ignorance and incapacity of persons engaging in the business of plumbing are held to be a proper and legitimate exercise of the police power of the state, and that the state may impose such restraint upon the business or work of plumbers by any reasonable regulations, which are calculated and are necessary for the purpose of insuring a character of plumbing, which will not endanger the safety or health of the citizens, generally. In Frank v. Paducah Water Co., 88 Ky. 467, while the question here was not exactly the question for determination there, in relation to the power of a municipality to regulate the business of plumbing, the court said:

"That the council of a city may require a license of all plumbers for the protection of its people from fraud and imposition, may be conceded; . . . ."

Statutes regulating the business of plumbing and requiring licenses of those engaged therein have been upheld in various states, but not all, where such legislation has been adopted. State Ex Rel Winkler v. Benzenberg, 101 Wis. 172; Ex Parte Smith, 231 Mo. 111; Nechamous v. Warden, 144 N. Y. 529; Com. v. Beauheun, 213 Mass. 138; Com. v. Shafer, 32 Pa. 497; Douglas v. People, 8 L. R. A. (N. S.) 1116; Singer v. State, 72 Md. 464; State v. Gardner, 58 Ohio State 599; Coven v. Coleman, 96 S. W. 774; Vicksburg v. Mullane, Sou. Rep. 412. Wherever a business or calling has concerned the public health, or special training or experience has been found to be necessary, in an individual, to fit him for the exercise of a business or calling with safety for the public health, it has uniformly been held, that the legislature may make reasonable regulations for the control of the business or calling to protect the public from the incapacity or ignorance or fraud of those attempting such

business or calling. The statutes, in this state, prohibit the practice of law, or medicine, or surgery, or embalming, or pharmacy, without the individual, who essays to engage in such matters, has a license authorizing him so to do, and these statutes have been uniformly upheld. They require an examination to test the qualifications of the applicants for certificates or licenses. These statutes have never been held as being in anywise violative of the 14th amendment or any part of either the state or federal constitutions, because the right to engage in any lawful occupation is not denied, but the right to engage in the business or follow the occupation or calling is subject to the right of the public, which is paramount to the right of the individual, to have reasonable regulations imposed upon its exercise, and such regulations as are necessary for the protection of the public health. At last, however, in the exercise of the inherent power of the state to regulate a business or calling in which citizens may engage, for the protection of the public, generally, the legislature must determine whether the end to be attained is a justification for the regulations imposed, and such right to determine is the exclusive province of the legislative authority, and with the determination of that question the courts have nothing to do, for otherwise the judicial authority would supersede the legislative altogether. On this question, in State Racing Association v. Latonia Agricultural Association, 136 Ky. 173, the court said:

"Only when the means adopted are manifestly unreasonable or oppressive or bear no logical relation to the object of the legislation are the courts at liberty to declare the act unconstitutional."

The same doctrine is substantially held in Johnson v. Higgins, 13 Met. 514; Eastern Coal Lands Co. v. Com. 127 Ky. 917, and in Com. v. Goldberg, 167 Ky. 96, where it is held that the only inquiry, which can be made when the validity of a statute is assailed in court is, whether or not the legislature has exceeded the constitutional limitations in the enactment of the statute. Hence, it is concluded that the regulation of the business of plumbing, in a large city, is a subject to which the legislative authority may lawfully address itself in the exercise of its police power for the protection of the safety and health of all the citizens of such city.

The power of the legislature to enact the act in question having been determined, the only question left for

determination is, whether the statute is unconstitutional and void, because it violates the right of every citizen to have the equal protection of the laws, and not to be required to bear burdens, which are not by law imposed upon others, or, in other words, whether the persons affected by the statute are arbitrarily and unreasonably required to submit to restrictions of their personal rights, which are not imposed upon others. It is insisted that it has the vice of being a special law, and is imposed upon plumbers only in cities of the first class, when the plumbers in the cities of other classes or those, who do not do business in cities of any class, are exempted from its restrictions. It is apparent, that to impose restrictions and burdens upon one citizen, which are not imposed upon others, of the same class, or where similar conditions prevail, would be discriminatory and class legislation, and would have the effect of denying equal rights to the ones upon whom the restrictions were placed; but it has often been held by this court and others, that when the legislative authority undertakes to legislate under the police powers of the state, it has authority to create classes, and to enact statutes, which apply to a particular class and regulate the operation of its business and action, by a law, which does not apply to other classes, provided the selection, of the class to be dealt with, is based upon some reasonable distinction, which distinguishes it from other classes of people. If the selection of the class is merely arbitrary and unreasonable and not founded upon a reasonable distinction between them and other classes, the enactment is void as being unconstitutional. Com. v. Goldberg, *supra;* Com. v. Remington Typewriter Co., 127 Ky. 177; Katzman v. Com. 140 Ky. 24; Safety Building & Loan Association, etc., 106 Ky. 115. The legislature, when it deems it necessary for the protection of the public health, may enact laws, which apply to only persons of a certain class, who reside in certain places where similar conditions exist. The fact that the population of a first class city is much greater than that of a city of any other class, and that many occupations and trades are engaged in, in the larger places, which do not exist in the smaller, and a variety of conditions exist in a first class city, which are absent from other cities, seems to create a basis for a reasonable distinction between the business of plumbing in a first class city and elsewhere, and many reasons doubtless exist, which induced the legislature to consider the regulation of plumbing in a

first class city necessary for the protection of the safety and health of its citizens and not to be necessary in the smaller centers of population. No contention can be made, that the legislative act, in question, does not equally affect all the persons of the class designated, in the place designated, and if it restricts the constitutional right of any of them, it equally restricts the same right in all other persons of their class, in cities of the first class. In Com. v. Ward, 136 Ky. 155, in holding that the objection to the constitutionality of the "Barber Law," because it only applied to the cities of the first, second and third classes, to be not tenable, it was said:

"'And as the cities and towns of the state have been classified, we know of no good reason why legislation of this character should not be limited to the classes of cities in which there exist conditions that seem to demand it.'"

And further in the opinion in the same case it was said:

"An act imposing limitations upon the individual in the pursuit of a business that comes within the police power will not be condemned as class or discriminatory legislation because it is limited to one or more classes of cities."

It is, also, objected that in as much as the act requires the journeyman plumbers to undergo an examination, to register and obtain a certificate of their competency from the board of examiners provided by the statute, and does not require the same of the master plumbers, that it creates an arbitrary and unreasonable discrimination against the journeyman plumbers, and for that reason the act is void. We conclude that the distinction made is not arbitrary or unreasonable. The act requires a journeyman plumber or a master plumber, who does work in the capacity of a journeyman plumber, or any person who installs or places plumbing fixtures or materials, to register and to undergo an examination and to obtain a certificate of competency before being authorized to work at the business. This creates a distinct class to be dealt with by the law, and is founded upon the distinction between the persons, who actually perform the work of plumbing and those, who merely contract to do plumbing and employ other persons to do the work, the latter class being the employing or master plumbers. In the opinion of the legislature the necessity existed for restraining and regulating the one and

not the other. Doubtless, the basis for the distinction arises from the fact, that the defects in plumbing and the dangers to be guarded against from improper and defective plumbing chiefly arise from the ignorance, incapacity or want of skill, in the persons, who actually do the work of plumbing, rather than from the want of qualification in the employing plumber, who does not actually perform the work. It will be observed, that the master plumber is included within the act, when he essays to participate in the work or engages in the capacity of a journeyman plumber. The legislature of New York, in regulating the business of plumbing, enacted that a master plumber, within the meaning of that legislation, was any person who hires or employes another to do plumbing work, Schnaier & Co. v. Grigsby, 113 N. Y. Supp. 548; and in Felton v. City of Atlanta, 61 South-Eastern Rep. 28, the Supreme Court of Georgia defined master plumbers and employing plumbers to be one and the same, and to be those, who did not hold themselves out as personally doing the work, but as contracting to furnish the material and to do the work through others, while journeyman plumbers were defined to be those skilled in the business and holding themselves out as able and willing to do the work themselves.

The purpose of the act was to protect the public, generally, from incapacity, ignorance, want of skill or fraud in those, whom to engage in the actual work of plumbing with safety to the health of the people must have skill and technical knowledge not possessed by the public, generally, and in granting such legislation the legislature was entirely within its authority, and if those, who, because they were plumbers at the time the law was enacted or had been engaging in the business for several years, were incompetent to be safely trusted to do plumbing, should be exempted from the operations of the law, the purpose of the law would not be attained. If one, who was engaged in plumbing at the time the law was enacted or had been for several years theretofore, was competent to be entrusted with such work, with safety to the public, he could easily undergo the examination and obtain the certificate; if incompetent to do the work of plumbing with safety to the public, he should be restrained until he becomes so. It is true, that in statutes regulating some professions and occupations, exemptions from the operation of certain provisions of those statutes have been accorded persons, who had, previous to

the enactment of the laws, been for a specified number of years engaged in the business or calling being dealt with, but the granting of such exemptions was the exercise of the legislative discretion, as there is no vested right, in any one, to follow an occupation, in a way, which is inimical to the health of the people, when the legislative authority exercises its right to regulate the occupation. Hence, the failure of the statute to exempt those, who were plumbers, at the time or before the enactment of the statute, from its operation, would not invalidate it.

The contention, that apprentices are included within the class required by the statute to be examined and to register before being permitted to work as apprentices, we do not think is tenable. The statute, in terms, does not include them and it should not be extended to include apprentices, who are working under the direct supervision and directions of a registered plumber.

The appellee likewise insists, that the portion of the act, which provides for a board of examiners and the examination by it of persons designated in the act, is violatice of section 51, of the constitution, which provides that, ''No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title . . .'' The argument is offered, that in as much as the title of the act does not contain any mention of a board of examiners nor an examination, nor the granting of a certificate to the applicant, all that portion of the act which deals with those subjects is void and should be eliminated from the statute, if the entire statute is not declared to be void. It is true, that this court in construing the section of the constitution, *supra,* has held that the title of an act must be reasonably and fairly expressive of the context of the act, and should be read with the context of the act in finding the meaning, Com. v. Barney, 115 Ky. 475; Joyce v. Woods, 78 Ky. 386, and that the title of the act cannot be relied upon to restrain or extend the provisions of the act, but it has, also, been held, that the general manner in which the subject of an act is to be accomplished need not be set out in the title. Collins v. Henderson, 11 Bush. 74; Com. v. Bailey, 81 Ky. 395; Com. v. Cain, 14 Bush 525. The purpose of the clause of the constitution, *supra,* was to prevent and discontinue the habit, which had grown up of incorporating into legislative acts, subjects, which were of no kin to each other nor to the subject expressed in the title, and sometimes amendments were permitted bearing upon

matters wholly distinct from the title and the subject treated in the original bill, and members of the legislature were thus unwittingly inveigled into giving their support to matters, of the existence of which in the bill they did not have knowledge, and which they would not have supported, if they had had knowledge of their existence in the bill. Hence, in Phillips v. Covington & Cincinnati Bridge Co., 2 Met, 220, where the court was construing a provision in the constitution of 1850, which was similar to section 51, of our present constitution, it said:

"Such a construction should therefore be given to it as is necessary to render it effectual in accomplishing the object for which it was designed, but it should not be so construed as to restrict legislation to such an extent as to render different acts necessary where the whole subject matter is connected and may be properly embraced in the same act."

This construction was referred to and approved in Conly v. Com. 98 Ky. 125; Nunn v. Citizens Bank, 107 Ky. 202; Eastern Kentucky Coal & Land Co. v. Com. 127 Ky. 702; Thompson v. Com. 159 Ky. 8; and Com. v. Starr, 160 Ky. 260. "If all the provisions of an act relating to the same subject are naturally connected, and are not foreign to the subject expressed in the title," the statute and its title sufficiently complies with section 51, *supra*, and it is considered that the statute relates to only one subject and that is expressed in the title. Johnson v. City, 121 Ky. 594; Weber v. Com., 24 R. 1726; Diamond v. Com., 124 Ky. 418; Connelly v. Com, *supra*; Nunn v. Citizens Bank, *supra*; Mark v. Bloom, 141 Ky. 474; Com. v. Starr, *supra*; Burnside v. Lincoln County Court, 86 Ky. 423; Bosworth v. State University, 166 Ky. 440; Smith v. Com., 175 Ky. 206; Phillips v. Covington & Cincinnati Bridge Co, *supra*. It can readily be observed, that the provisions of this act, which relate to the appointment of a board of examiners and an examination and granting of certificates to the persons required to do so by the act, all relate to the same subject, that of registering those engaged in plumbing and their supervision and inspection of their plumbing. The sections of the act are naturally connected with each other and the subject expressed in the title, and are germane to the subject expressed in the title and are not foreign to it.

Hence, the court was in error in sustaining the demurrer to the warrant, and the judgment is reversed and the cause remanded for proceedings consistent with this opinion.