## TREWITT v. CITY OF DALLAS. (No. 8818.)

(Court of Civil Appeals of Texas. Dallas. May 27, 1922. Rehearing Denied June 24, 1922.)

**1. Health ⊜⟶20—Plumbing business concerning public health subject to police regulation.**

It is universally regarded as essential that all plumbing work should be planned and installed with a degree of skill which will insure and safeguard the lives and health of people from the dangers well known to flow from improper plumbing, and the calling of a plumber bears a close relation to and does concern the public health, and is accordingly a business which is the subject of police regulation.

**2. Licenses ⊜⟶7(1)—Ordinance creating examining board for plumbers not invalid as not providing for doing certain work by unskilled persons.**

Plumbing ordinance of city of Dallas imposing the requirement of a reasonable examination upon those desiring to do plumbing work in the city is not invalid for not providing for the doing of certain work that requires no technical skill under the direction of master plumbers by persons who are skilled in a particular branch of plumbing, but who are not skilled plumbers, and who are therefore unable to pass a reasonable examination covering the whole field of plumbing, is not unreasonable because it does not undertake to provide distinct, minute regulations and requirements for examinations as to particular kinds of work comprehended within the plumber's trade.

**3. Licenses ⊜⟶7(1)—Plumbing ordinance not unreasonable as providing 30 days only for preparing for examination.**

Plumbing ordinances of the city of Dallas, providing that master plumbers and journeymen plumbers are required to appear within 30 days before the board and stand an examination, was not unreasonable and arbitrary; the ordinance explicitly requiring that the examination should be reasonable.

**4. Licenses ⊜⟶7(1)—Plumbing ordinances of city held not to prohibit the use of apprentices and helpers.**

Under the terms of plumbing ordinances of city of Dallas, apprentices and helpers are not excluded from the opportunity to acquire suffi-

cient skill and experience to enable them to pass the examination and become licensed plumbers.

**5. Constitutional law ⊂⇒88—Right to follow occupation of plumbing subject to state's right to impose reasonable regulations.**

The right to follow any lawful business or occupation is recognized and protected both by the United States Constitution and the Texas Constitution, but such right is subjected to the paramount, inherent right of the state in any given instance to impose upon it such reasonable limitations and regulations as the general welfare and public good may demand, and plumbers' ordinance of the city of Dallas, requiring that all master plumbers and journeymen present themselves within 30 days for examination for license did not violate either the federal or state Constitutions, as denying to persons the right of pursuing a lawful business or calling, skill in which is of necessity acquired through actual experience as an apprentice or helper.

**6. Statutes ⊂⇒93(4)—State law under which plumbers licensing ordinance enacted not invalid because operation limited to cities of 5,000 or more.**

Cities, towns, and villages may be classified in terms of population, if the classification with reference to the subject-matter legislated upon is based upon a reasonable difference, which distinguishes those cities affected by the law from those which by its terms are excluded from its operation, and a state law limited to cities of 5,000 population or more, under which a plumbers' ordinance was enacted by the city of Dallas, was not such an unreasonable classification as to constitute class legislation.

**7. Municipal corporations ⊂⇒III(1)—Plumbing ordinance held not to have been enacted without legislative determination of necessity.**

Notwithstanding that plumbing ordinance of the city of Dallas was enacted in compliance with the mandatory provisions of a state law requiring the city and other similar cities to enact such ordinance, where the preamble of the ordinance referred to the provisions of the state law in conformity with which it was enacted, but, independent of such reference, in the preamble, it is stated that in the judgment of the commissioners the public health is menaced by the inefficient manner by which plumbing is done, and that the board deems imperative the adoption of the regulations provided by the state law, it cannot be said the ordinance was passed in the absence of a legislative determination of the necessity.

**8. Licenses ⊂⇒13—"Employing plumber" and "journeyman" as used in licensing ordinance apply to those doing mechanical work requiring skill and experience.**

The terms "employing plumber" and "journeyman" are technical terms, and as defined and used in plumbing ordinance of the city of Dallas apply to those who do certain kinds of mechanical work requiring skill and experience.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Journeyman; Second Series, Employing Plumber.]

**9. Constitutional law ⊂⇒45—Whether plumber's ordinance valid question of law.**

Whether plumber's ordinance of the city of Dallas was valid and constitutional was not a question of fact, but entirely a question of law, and its validity must be measured by and tested under the provisions and restrictions of the state and federal Constitutions, either expressed or existing by clear inference and implication, and where there was no constitutional provision violated by the ordinance as appears from its own terms and provisions, and since it was a reasonable and proper exercise of police power, it must be declared a valid enactment.

Appeal from District Court, Dallas County; Royall R. Watkins, Special Judge.

Action for injunction by A. P. Trewitt against the City of Dallas. From judgment sustaining a general demurrer to the petition, plaintiff appeals. Affirmed.

Walter M. Nold, A. S. Rollins, and Templeton, Beall, Williams & Wonham, all of Dallas, for appellant.

J. J. Collins, C. F. O'Donnell, Allen Charlton, and Carl B. Callaway, all of Dallas, for appellee.

HAMILTON, J. This appeal is prosecuted from a judgment sustaining a general demurrer to a petition by virtue of which appellant sought a temporary injunction to restrain the mayor and commissioners of the city of Dallas from attempting to enforce an ordinance enacted March 3, 1922, creating the examining and supervising board of plumbers, "as prescribed by the state law for the licensing of plumbers and those engaged in the plumbing business within the city of Dallas, fixing the term of office and prescribing a penalty."

Appellant's verified petition contained substantially the following allegations:

That the appellees were about to appoint such examining and supervising board of plumbers, and were about to attempt to enforce the provisions of the ordinance; that appellant was engaged in the business of a master plumber in the city of Dallas, being an employer of plumbers and the owner of a plumbing business; that the enactment and enforcement of the ordinance would injure him in the conduct of his business; that under its terms he could not employ plumbers in the city of Dallas without first standing the examination provided for under the ordinance; that the ordinance impaired his credit and imperiled his business, and was such as would render the continuance of his business, or any plumbing business in the city of Dallas, uncertain, in that upon his death neither his widow, executor, administrator, nor creditors could continue the business, even though they should undertake to conduct it by employing qualified and ex-

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

perienced plumbers to do the actual plumbing work.

It was alleged that the public health was not in any way affected by the business of a master plumber, that he had employed only skilled and experienced plumbers in conducting his business, and that the ordinance is arbitrary, unreasonable, confiscatory, and void, being violative of the Fourteenth Amendment to the Constitution of the United States, and of section 3, art. 1, of the Constitution of the state of Texas.

Appellant alleged the ordinance to be void on the ground that it is indefinite and uncertain with reference to prescribing qualifications, skill, and experience to be required of master plumbers by the board of examiners, and that the ordinance imposes no directions or instructions upon the board as to what should constitute the qualifications, knowledge, skill, and experience of master plumbers, but leaves the board free to prescribe requirements which might be wholly arbitrary, unreasonable, and burdensome.

The ordinance was alleged to be void because it was enacted in pursuance of the directions of the state law, which was alleged to be discriminatory, unconstitutional, and void, because such law provides that it shall apply only to cities of more than 5,000 population, and appellant alleged that such classification upon the basis of population was arbitrary, unreasonable, and capricious, and that, since it was enacted to apply only to cities having a population of more than 5,-000, it is not uniform in its operation.

The ordinance was alleged to be void because it does not apply to corporations engaged in the plumbing business and employing plumbers; it was alleged to be void on the ground that it was arbitrary, unjust, and unreasonable, because all branches of the plumbing business do not alike affect the public health and the public comfort. In connection with this allegation it was asserted that certain persons are experts in one particular kind of work denominated as plumbing and others in other kinds of work denominated as plumbing, those pursuing a particular branch of the trade knowing nothing about the others. It was alleged that much of the plumbing business consists in simple acts of manual labor, requiring no knowledge or skill whatever, and that under the ordinance this particular kind of plumbing work could be done only by those passing the prescribed examination; that the ordinance requires such work to be done by skilled plumbers, instead of by common laborers, which imposes burdensome costs and expense both upon appellant and the public. It was alleged that much of the plumbing business consists of such repair work as putting new washers on hydrants, replacing hydrants on water pipes, cleaning out and unstopping sinks, etc., which could be intrusted safely to helpers or apprentices learning the plumbing trade, whereas such laborers or apprentices are inhibited from performing this character of work under the provisions of the ordinance, and only those having general skill and experience are permitted by its terms to do repair work; and, in this respect, the effect of the ordinance is to impose upon appellant and the public increased burdens of expense and, at the same time, to deny to apprentices and helpers an opportunity to learn the plumbing trade. And, in the same connection, it was alleged that the ordinance contains no provisions for apprentices and helpers to learn the plumbing trade, and that its enforcement would necessarily result in the creating of a monopoly in the plumbing business in behalf of particular individuals who now possess the knowledge, skill, and experience in the technical art of plumbing sufficient to enable them to pass the examinations prescribed in the ordinance.

The effect of the enforcement of the ordinance was alleged to be: (1) To confer upon persons engaged in the plumbing business in the city of Dallas who could pass the prescribed examination a monopoly of the business; (2) to compel appellant and all other master plumbers similarly situated in the city of Dallas who could not pass the examination to abandon their business and permit the business of a master plumber hereafter to be conducted by journeymen plumbers; (3) to limit the number of journeymen plumbers to those who at this time possess the skill and experience requisite to pass the prescribed examination; (4) to prohibit under penalty any person from acquiring, by actual work or experience as apprentice or helper, knowledge and skill sufficient to enable them to pass the examination; and (5) to give to journeymen plumbers passing the examination a monopoly of all the work incident to the plumbing business without regard to whether or not technical skill and experience might be required in doing such work, and without regard to the increased cost resulting to appellant and the public.

The ordinance is set out in full in the petition, and the above-stated allegations may be said to constitute, in a large measure, appellant's application of its terms. Some of the allegations descriptive of the ordinance and its effect we think are manifestly mere conclusions of the pleader, without any basis of fact recited by express allegations or founded in the terms of the ordinance itself.

The ordinance is comprised in 19 sections, substantially of the following respective contents:

Section 1 provides that the ordinance is enacted pursuant to the state law to create the examining and supervising board of plumbers, to consist of a suitable member of

the local board of health; a city engineer and city inspector of plumbing, a master plumber of not less than 10 years' active experience as a plumber, and a journeyman plumber of not less than 5 years' active experience as a plumber.

Section 2 provides that the members of the board shall exercise the authority conferred at the will of the mayor of Dallas; that the members of the board shall act without compensation, and shall hold their offices subject to the terms of the ordinance and qualifications and disqualifications prescribed by the city charter governing employés and officers.

Section 3 provides for the organization of the board after its appointment, and provides for fixing by the board of dates at reasonable intervals, of time for hearing applicants for examination and licenses as provided by the ordinance.

Section 4 makes it the duty of the board to pass upon all persons engaged in the business of plumbing as master plumbers and journeymen plumbers, and all persons who may wish to engage in such business of master plumber or journeyman plumber, and also all persons who may apply for the office of plumbing inspector. This section provides for the issuance of licenses to those who shall successfully pass the examination prescribed by the board, and also provides for their registration.

Section 5 declares that license shall not issue for more than 1 year, and provides that it shall be renewed from year to year upon application.

Section 6 provides that an examination fee shall be paid to the city tax collector by each applicant for examination, and prescribes $3 as the fee to be paid by each applicant for a master plumber's license and $2 by each applicant for a journeyman's license.

Section 7 provides that the license granted shall be personal to the licensee and nontransferable, and that only one fee shall be required of the same person. This section prohibits the issuance of a license to any person to carry on or work at the plumbing business, or to act as an inspector of plumbing until he shall have registered and passed the required examination.

Section 8 requires those engaged in the business of a master plumber, or plumber, within 30 days from the date the ordinance became effective, to make application in writing to the board for a license to engage in such calling, the application to be made upon a form to be prepared by the board and supplied to the applicant; the application to be filed with the city secretary. It is therein provided that the board shall provide a speedy and reasonable examination for each application, and for this purpose it is provided that the board shall hold continuous hearings within reasonable hours until all applicants shall have been examined.

Section 9 provides that the board shall prescribe a reasonable examination of a uniform, fair, and impartial nature, testing the knowledge and skill of each applicant as a master plumber or journeyman plumber to supervise or perform plumbing work necessary in connection with house draining, tapping, and making connection with the sanitary sewer system, and to supervise or do the work required by the plumbing ordinance of the city. It provides for an examination of journeymen plumbers to determine their ability to do the work of a plumber in fitting dwellings, public buildings, tanks, pipes, traps, making taps and connections and installing fittings, etc., for the conveyance of water and sewage in connection with the sewer system In order, as stated in the ordinance, that in all cases such work may be so done as to prevent harmful results to the public health, provision is made for written examination in cases where such written examination submitted shall be signed by at least four-fifths of the members of the board and attested by the secretary of the board; and it is provided that in submitting examinations due regard shall be had and heeded by the board for the particular class of work required to be done and customary and commonly done by master plumbers and journeymen plumbers. It is also provided that, if an applicant should not be able to take a written examination, an oral examination shall be given.

Section 10 requires that the board shall conduct examinations with the utmost fairness and patience, and requires that in the event of failure of an applicant to pass the board shall fully apprise him as to wherein he fails to meet the requirements of the examination, and supply to such unsuccessful applicant a re-examination within a reasonable time after his failure to pass, provided such re-examination shall not be delayed longer than one week, should the delinquent applicant within such time desire the examination.

Section 11 provides that no applicant shall be denied a license or examination on account of his affiliation or nonaffiliation with any organization, union, or association; and that, should it appear that an applicant has been denied a license by the board after two unsuccessful examinations, and such applicant believes that he was denied a license on account of prejudice or any other improper influence, or in violation of the ordinance, then it shall be the duty of the city attorney's department, upon such applicant making an affidavit relating such facts, to represent him in an application for a rehearing, whereupon the board shall immediately order a re-examination of the applicant, who shall have the right to furnish testimony

touching his qualifications. This section specifically requires the city attorney's department to exercise all of its power to aid and assist the applicant in obtaining a full and impartial hearing on any such application, and further provides that after the examination of any such applicant the city attorney, in case the applicant is again unsuccessful, shall report all such facts to the mayor, and if in the opinion of the city attorney and the mayor the applicant has been treated unfairly, and if it appears from the surrounding circumstances that the applicant should have a license, the mayor shall have the power to order a special investigation into the manner of the examination of such applicant, and may for this purpose appoint a committee of practical and skilled persons in the calling or business of plumbing, or such number of such persons as the mayor may deem advisable. It is provided that after such committee appointed as aforesaid by the mayor has examined the applicant and reported the result of it to the mayor, the latter shall certify the result and all available facts connected with it, whereupon it shall be the duty of the board thereafter to consider all such facts, or any additional facts that may be furnished by the applicant and make a re-examination of him; and it is provided that nothing contained in the ordinance shall at any time prevent the mayor and board of commissioners from instituting an investigation into any applicant who may be denied a license, and reporting to the board for its consideration and judgment. This section also provides that the mayor at any time may declare the position of any member of the board vacated if it should appear to him that any such member of the board is controlled by improper motives of any kind in granting or refusing licenses to applicants.

By section 12 the board is required to be diligent in assisting applicants by enlightening them concerning the rules prescribed by it for examination, as well as furnishing them all reasonable assistance so as to receive a speedy examination; and it is made the duty of the board, at least once in every three months, to report to the mayor, and at such other times as he may demand, a full report showing the transactions had before the board, the applications granted, the names of the persons denied licenses, the method of examination; and by this section the board is required to recommend needful changes to be adopted concerning the doing of plumbing work in connection with the sanitary sewerage system of the city of Dallas and the waterworks system which may affect the public health or affect the public regulation of the plumbing business in connection therewith.

Section 13 defines a master plumber to be an employing plumber and a person who does not hold himself out as personally doing plumbing work, but as contracting to furnish the material and doing the work through others. A journeyman plumber is defined to be a person skilled in the calling, and holding himself out as being able and willing to do the work of a plumber.

Section 14 defines the term "person" as used in the ordinance to mean:

"Any person, association of persons or others, or any servant, agent or employé of such, engaged in the business or calling of plumbing."

We deem it unnecessary to state the provisions of sections 15, 16, and 17, for the reason that they have no bearing upon the propositions upon which appellant stands to invalidate the enactment.

Section 18 makes the violation of the ordinance an offense, and provides a penalty.

Section 19 is as follows:

"Whereas, on account of the mandatory requirement of the state law, the city of Dallas is required to pass the hereinabove provisions governing and relating to the public health, as well as on account of the promiscuous and reckless use of the sanitary sewers and the water mains, and the doing of plumbing work in an inefficient and hurtful manner, which is necessary to be regulated in behalf of the public health, creates an urgency and an emergency in behalf of the immediate preservation of the public health, safety and morals of the public, and this ordinance becomes effective from and after its passage, and it is accordingly so ordained that this ordinance shall be and become effective from and after its passage as in the charter in such cases is made and provided." •

The foregoing is a full recital of the essential elements and provisions of the ordinance.

[1] The ordinance and the judgment of the court sustaining appellee's general demurrer are assailed in 11 propositions submitted by appellant. The first two propositions are to the effect that the business of a master or employing plumber is not related to and does not affect the public health, comfort, or convenience so as to render such business a proper subject for police regulations.

That the plumbing business is related to and affects the public health and public welfare we think is beyond the realm of controversy. The plumber is an expert to whom is committed the work of installing in the habitations and public buildings occupied generally by people in cities all the various plumbing fixtures used for the conveyance of gas and water and sewage. He also installs various distribution systems appertaining to heating plants. It is universally regarded as essential that all such work should be planned and installed with a degree of skill which will insure and safeguard the lives and health of people from the dangers well known to flow from improper plumbing. This being true, the calling of a plumber bears a close relation to and does concern the public health. It is accordingly a busi-

ness which is the proper subject of police regulation. State v. Gardner, 58 Ohio St. 599, 51 N. E. 136, 41 L. R. A. 689, 65 Am. St. Rep. 785. It has been held to be of the highest importance to the public that plumbing work should be "as skillfully planned and executed as the modern standard of sciences admits." Douglas v. People ex rel. Ruddy, 225 Ill. 536, 80 N. E. 341, 8 L. R. A. (N. S.) 1116, 116 Am. St. Rep. 162. This was said with reference to the business of a master plumber. The theory that the reasonable regulation of the business of master plumbers, as well as journeymen plumbers, naturally may be expected to promote the public health, seems to have been rather generally entertained by the courts of various states of the Union. Singer v. State, 72 Md. 464, 19 Atl. 1044, 8 L. R. A. 551; People ex rel. Nechamcus v. Warden, 144 N. Y. 529, 39 N. E. 686, 27 L. R. A. 718; Felton v. City of Atlanta, 4 Ga. App. 183, 61 S. E. 27; Robinson v. City of Galveston, 51 Tex. Civ. App. 292, 111 S. W 1076; Cavien v. Coleman, 100 Tex. 467, 101 S. W. 199.

[2] It is contended that much of the work done under the direction of master plumbers requires no technical skill, knowledge, or experience in the plumbing business, for which reason the ordinance is unreasonable because it makes no provision for the doing of such work by persons who are skilled in a particular branch of plumbing, but who are not skilled plumbers, and who are therefore unable to pass a reasonable examination covering the whole field of plumbing.

The ordinance is not subject to this criticism. It does not contain any definite prescription as to what examination shall be used to test the knowledge of those who desire to pursue the calling or occupation of plumbing. It only provides for reasonable examinations. Since it is a valid exercise of police power to impose the requirement of a reasonable examination upon those desiring to do plumbing work in the city of Dallas, and the ordinance requiring only this, it cannot be invalidated upon the ground suggested under this contention. It is not unreasonable because it does not undertake to provide distinct, minute regulations and requirements for examinations as to particular kinds of work comprehended within the plumber's trade.

[3] The fourth ground of objection to the ordinance is that the 30-day period within which under the ordinance's provisions master plumbers and journeymen plumbers are required to appear before the board and stand an examination is unreasonable and arbitrary, because it does not afford a reasonable opportunity for applicants to prepare themselves to pass an examination. We think reference to and examination of the terms of the ordinance itself satisfactorily establishes the error of appellant's position in this respect. The ordinance explicitly requires that the examination shall be reasonable. This requirement is emphasized by repetition and reference running throughout the ordinance as to the reasonableness of examinations. The terms of the ordinance themselves answer the contention as to any unreasonable requirement in this respect. Those who hold themselves out as master plumbers may be presumed to have, or be able to acquire, within 30 days such knowledge of the business as to pass a reasonable examination. Master plumbers are not mere merchants. They contract for the work and do it through others. They have control and direction of it.

[4] The fifth proposition contended for by appellant is that the ordinance creates and perpetrates an unlawful, vicious, and burdensome monopoly by requiring master plumbers and journeymen plumbers, who are not qualified by possession of knowledge and experience not hitherto required of them to pass a reasonable examination, and makes no provision for accession to their number or for their successors in event of death, etc., from the ranks of apprentices or helpers.

Under the terms of the ordinance we think that apprentices and helpers are not excluded from the opportunity to acquire sufficient skill and experience to enable them to pass the examination and become licensed plumbers. There is no express provision in the ordinance relating to or providing for apprentices and helpers. The ordinance contains no language which we think under fair construction inhibits the use of apprentices and helpers. Section 14 defines the word "person" as used in the ordinance to mean:

"Any person, association of persons or others, or any servant, agent or employé of such, engaged in the business or calling of plumbing."

The manifest meaning of this section is to make it plain that those who pursue the business of plumbing as such, regardless of whether they do it as individuals or through associations, shall first comply with the requirements of the ordinance. It does not exclude the employment of apprentices and helpers.

[5] It is next contended that the ordinance is in violation of both the federal and state Constitutions, in that it denies to certain persons the fundamental and inalienable right of pursuing a lawful, useful, and necessary business or calling, skill in which is of necessity acquired through actual experience as an apprentice or helper; and criticism is made that no provision is expressed by the terms of the ordinance for the use of helpers and apprentices. The right to labor in any useful occupation is a sacred and natural right which cannot be disregarded. The right to follow any lawful business or occupation as a means of livelihood is recognized and protected both by the United States Constitution and the Constitution of Texas, but such right is subjected to the

paramount, inherent right of the state in any given instance to impose upon it such reasonable limitations and regulations as the general welfare and public good may demand. Douglas v. People ex rel. Ruddy, supra. The ordinance does not violate either the United States Constitution or the Constitution of Texas. Caven v. Coleman, supra; Felton v. City of Atlanta, supra; Robinson v. City of Galveston, supra; City of Louisville v. Coulter, 177 Ky. 242, 197 S. W. 819.

[6] The proposition is advanced that the state law under which the ordinance was enacted is unconstitutional on the ground that its application and operation is limited to cities of 5,000 population and more; it being contended that such classification is unreasonable, capricious, and arbitrary, and constitutes class legislation. Cities, towns, and villages of a state may be classified in terms of population and the classification made the basis for legislation, provided such classification with reference to the subject-matter legislated upon is based upon a reasonable difference which distinguishes those cities affected by the law from those which by its terms are excluded from its operation, and such classification as a basis of legislation for the enactment of such police measures as that here involved has been recognized and sustained repeatedly by the opinion of courts commanding universal respect. Caven v. Coleman, supra; Robinson v. City of Galveston, supra; Douglas v. People ex rel. Ruddy, supra.

[7] It is insisted that the ordinance is invalid because it was enacted in compliance with the mandatory provisions of a state law requiring the city of Dallas and other similar cities to enact such ordinance, and that the enactment, by its own terms reciting that it is in compliance with the requirement of the state law, evidences an absence of legislative determination of the necessity for and reasonableness of the ordinance. The preamble of the ordinance refers to the provisions of the state law in conformity with which the ordinance is enacted, but, independent of such reference, in a separate and distinct paragraph of the preamble, it is stated that in the judgment of the board of commissioners the public health is menaced by the inefficient manner in which plumbing is done, and that the board of commissioners of the city of Dallas deems imperative the adoption of the regulations provided by the state law to secure the public health and protect it against harm. If, therefore, it should be essential to the validity of the ordinance that by its own terms it should contain evidence of legislative ascertainment of its necessity by the municipal lawmaking body, then the above-quoted provisions of the preamble sufficiently supply evidence of such declaration of the motive which prompted the enactment of the ordinance. We think its validity is to be determined altogether with reference to the proposition of whether or not the board of commissioners was clothed with the authority to enact the ordinance, and upon the further proposition of whether or not the effect of its enactment and operation would be to infringe upon a constitutional right possessed by appellant.

[8] The last proposition advanced to impute invalidity to the ordinance is to the effect that it is discriminatory and constitutes class legislation, for the reason that it contains no express provision by which the burdens it imposes upon appellant are also imposed upon corporations engaged in the same business in Dallas; and the proposition is advanced that if the ordinance is construed so as to apply to corporations, then its enforcement as to corporations and as to the individual stockholders thereof would be impracticable, if not impossible. The terms "employing plumber" and "journeyman plumber" are technical terms, and each has a well-defined meaning. Those terms as defined and used in the ordinance apply to those who do certain kinds of mechanical work requiring skill and experience. Such work calls for the mechanical skill and experience of a master plumber in the one instance and of a journeyman plumber in the other instance. Such skill and experience is personal to such classes of people; it cannot be possessed or applied by a corporation as such. We are unable to perceive any necessity for determining whether or not the law should apply to a corporation. In the nature of things, we think a corporation could not engage in the occupation either of a master plumber or of a journeyman plumber. A corporation might be organized to conduct a business depending for its revenue upon the employment of plumbers, but it, as such, could not do the actual work of a plumber. It could not engage in the plumber's trade, either as a master plumber or journeyman plumber, any more than a corporation, as such, could practice law or any of the learned professions.

[9] The eleventh and last proposition relied upon by appellant is that the petition stated a cause of action, and that the effect of the general demurrer was to admit the facts alleged, and that the court could not say, as a matter of law, that the ordinance was a necessary and reasonable exercise of police power, and that it would not constitute a confiscation of appellant's property in violation of constitutional provisions, both federal and state. If the ordinance is a valid one, then in no event should its operation and enforcement be enjoined by a court of equity. Whether or not it is valid and constitutional is not a question of fact, but altogether a question of law. Its validity must be measured by and tested under the provisions and restrictions of the state and federal Constitutions, either expressed or existing by clear

inference and implication. Since we are of the opinion that there is no constitutional provision violated by the ordinance as appears from its own terms and provisions, and since in our view it is a reasonable and proper exercise of police power, we must declare it to be a valid enactment.

Even if we were of the opinion that the ordinance is void, we would be doubtful of the power and right of a court of equity to grant relief against it by injunction under the allegations. The enactment is a criminal ordinance, and, even if it appeared to be unreasonable and void, still a court of equity should not enjoin its being put into effect at the instance of a complainant who does not definitely and specifically disclose in his pleadings a property loss to himself which appears to be imminently threatened. That the petition in this case meets such requirement is at least doubtful to us. It contains no allegations of a definite set of facts upon which to predicate evidence of loss in such respect. The ordinance imposes no penalty or threat against anybody for the work of a master plumber, except the person who undertakes to do such work without first having a license.

In the case of City of Austin v. Cemetery Ass'n, cited and relied upon by appellant, the Supreme Court of Texas supposes a case of the enactment by a city, without charter power to enact it, an ordinance prohibiting the sale of butcher's meat in a certain locality, and also prohibiting any person from selling meat to be there sold, or from buying in the prohibited place. The court states that such ordinance could be enjoined because the necessary effect of such void enactment might be effectually to destroy the business of a market man in such locality. In the same connection the court states that if a penalty were denounced against no one but the market man who should sell, "it would seem that his remedy would be to proceed with his business and defeat any prosecution that should be brought against him for the infraction of the void ordinance." City of Austin v. Austin Cemetery Ass'n, 87 Tex. 337, 28 S. W. 530, 47 Am. St. Rep. 114. Such is the case here determined.

The judgment is affirmed.