COMMONWEALTH *vs.* RAPHAEL BEAULIEU.

Bristol.    October 28, 1912. — November 26, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & DECOURCY, JJ.

*Plumber. Pleading, Criminal,* Complaint. *Constitutional Law,* Police power.

St. 1909, c. 536, § 4, provides that "No person shall do any work in plumbing which is subject to inspection, unless he has been registered or licensed as a journeyman plumber in accordance with the provisions of this act." A complaint charging violation of the statute alleged that the defendant "did . . . do certain work in plumbing which was subject to inspection, . . . [he] . . . not being then and there registered or licensed as a journeyman plumber in accordance with the provisions of" the statute. A motion to quash the complaint on the ground that it charged no offense known in law was overruled. *Held,* that the motion properly was overruled, since the statute set forth with precision and certainty all the elements necessary to constitute the offense and the complaint used the words of the statute.

St. 1909, c. 536, relating to the supervision of plumbing and providing among other things for the examination and licensing of master and journeyman

plumbers and for the punishment of persons who, without being licensed according to the provisions of the statute, perform any work in plumbing which is subject to inspection, is a reasonable exercise of the police power and is constitutional.

COMPLAINT, received and sworn to in the Third District Court of the County of Bristol on March 30, 1912, charging that the defendant on three different occasions "did . . . do certain work in plumbing which was subject to inspection, . . . [he] . . . not being then and there registered or licensed as a journeyman plumber in accordance with the provisions of" St. 1909, c. 536.

On appeal to the Superior Court, the case was tried before *Fox*, J. The defendant moved to quash the complaint "for the reason that no offense or offenses known in law are therein charged." The motion was overruled; and the defendant alleged an exception.

There was evidence introduced tending to show that the defendant was twenty-two years of age; that at the different times alleged in the complaint he was working for one Bolduc, a master plumber, who was duly licensed and also was the holder of a license as journeyman plumber, Bolduc placing him in different new houses to do plumbing work with the assistance of a helper; that much of this plumbing work was subject to inspection under the ordinances of New Bedford, where the houses were located and where the defendant worked; that the defendant was not licensed nor registered either as a journeyman plumber or as a master plumber; that the defendant had worked at the plumbing business for about five years and was trying to learn the trade of journeyman plumber; that he had taken examinations on four different occasions before the State board of examiners for plumbing licenses and had failed to pass each time; that Bolduc's duties were mostly overseeing the work of his various employees, who numbered twelve or fifteen persons and among whom there were from three to five men doing plumbing work, only one of whom was a licensed journeyman plumber; that the defendant on the days alleged in the complaint had been seen caulking joints, wiping joints and installing a fresh air vent pipe which extended from the cellar through the roof and connected with the various "traps," which was work subject to inspection; that Bolduc called upon the defendant once or twice a day, each call lasting

from one half hour to two hours, gave him directions as to how to perform his work and what should be performed, and later examined the work which had been performed; that afterwards, when all of the plumbing had been completed, examined and tested by Bolduc, it was re-examined and tested by an official of the board of health of New Bedford before the plumbing which had been performed by the defendant could be used; and that all plumbing before it was used by the owners or tenants was made to conform with the plumbing regulations and was inspected and approved by the official of the board of health as required by law.

At the close of the evidence the defendant made seventeen requests for rulings, of which the first twelve, the sixteenth and the seventeenth were based on an assumption that the defendant was an apprentice "or a person working under a verbal agreement for instruction." The thirteenth request was for a ruling that on all the law and the evidence the defendant was entitled to be acquitted, and the fourteenth and fifteenth were for rulings that St. 1909, c. 536, was unconstitutional. The judge refused to give any of the rulings asked for, and charged the jury that there was but a single question to be tried, namely, whether the defendant "did work in plumbing and without a license. Of course, it is agreed that he didn't have any license, and I understand that it is agreed that the business that he was engaged in, the kind of plumbing that he was engaged in, the putting together of soil pipe, was business that was subject to inspection. So if you accept the testimony, what is admitted by the defendant as to what he was doing, and the kind of work, and the way he was doing it with a helper, on his statement you would be clearly warranted, gentlemen, in finding that he committed the offense which is described in this complaint."

The jury found the defendant guilty; and the defendant alleged exceptions.

*A. Auger,* for the defendant.

*J. T. Kenney,* District Attorney, for the Commonwealth.

HAMMOND J. The motion to quash was rightly overruled. The general rule is that when the statute sets forth with precision and certainty all the elements necessary to constitute the offense intended to be punished, an indictment or complaint which uses the words of the statute is sufficient. *Commonwealth* v. *Barrett,*

108 Mass. 302, and cases cited. The rule is applicable to this complaint.

At the trial the evidence tended to show that the defendant, not being registered or licensed thereto as required by statute, did plumbing work which was subject to inspection. The presiding judge charged that if the jury believed this evidence they should convict. It is now urged that the defendant might have been found working as an apprentice, or under the immediate supervision of a journeyman plumber. But the evidence would not warrant such a finding. We see no error in the manner in which the judge dealt with the first thirteen, the sixteenth and seventeenth requests.

The fourteenth and fifteenth requests raise the constitutionality of the statute. The defendant contends that the statute violates the provisions of the Federal and State Constitutions relating to the personal liberty of the citizen. He contends that he has the right to work at his will and to earn his living by work at any lawful trade or occupation he sees fit, and that this statute unduly interferes with that right and is therefore unconstitutional.

Speaking in general terms, it may be said that no one questions the existence of the right of every person to follow any legitimate calling for the purpose of earning his own living, or for any other lawful purpose. It is a sacred right and is protected both by the Federal Constitution and that of this Commonwealth. U. S. Const. Amendm. art. 14, § 1. Declaration of Rights, art. 1, 10.

But, sacred as this right may be, it is not absolute: Like almost every other individual right, it must yield to the right of the government to impose such reasonable restraints as are required for the protection of the public health, public safety and public morals, or, in other words, to the police power. "The nature of . . . [this] . . . power and its extent, as applied to conceivable cases, cannot easily be stated with exactness. It includes the right to legislate in the interest of the public health, the public safety and the public morals. If the power is to be held within the limits of the field thus defined, the words should be interpreted broadly and liberally. If we are to include in the definition, as many judges have done, the right to legislate for the public welfare, this term should be defined with some strict-

ness, so as not to include everything that might be enacted on grounds of mere expediency." Knowlton, C. J., in *Commonwealth v. Strauss*, 191 Mass. 545, 550.

While the existence of these two rights, namely, the private right to liberty as to work and the public right to be protected as to health, safety and morals, is universally admitted, and, while also there is no question that there is a line beyond which, as against the other, neither can go, still, as might reasonably have been expected, there is considerable diversity of judicial opinion as to where the line shall be drawn; and sometimes also the interpretation and scope of the particular statute may be in dispute. The principles pertaining to the exercise of the police power have been recently considered at some length in *Commonwealth v. Strauss, ubi supra,* and at this time there is no occasion for an extended discussion of them. See among others the following cases in which the various sides of the controversy are presented: *Dent v. West Virginia,* 129 U. S. 114; *Powell v. Pennsylvania,* 127 U. S. 678; *Singer v. State,* 72 Md. 464; *Nechamcus v. Warden,* 144 N. Y. 529; *Douglas v. People,* 225 Ill. 536; *Ex parte Smith,* 231 Mo. 111; *State v. Justus,* 90 Minn. 474; *Schnaier v. Navarre Hotel & Importation Co.* 182 N. Y. 83; *Henry v. Campbell,* 133 Ga. 882; *State v. Benzenberg,* 101 Wis. 172; *State v. Smith,* 42 Wash. 237.

Plumbing work is frequently installed in dark and comparatively inaccessible places. It is obvious that if the work be badly done the public health may be endangered, and that the defect by reason of its location may not be suspected until after a considerable time. In view of the relation between plumbing work and the public health the Legislature may take reasonable precautions for the protection of the public health from the incapacity and ignorance of the worker. Such is the general weight of the authorities. Upon an examination of this statute we are unable to say that its requirements are unreasonable. See *State v. Benzenberg, ubi supra,* arising under a statute very similar to the one before us.

                                            *Exceptions overruled.*