HENCH v. STATE PLUMBING BOARD.

MANDAMUS — PLUMBING PERMITS — JOURNEYMAN AND MASTER PLUMBERS.

Journeyman plumber *held*, not entitled to writ of mandamus compelling State plumbing board to issue him a plumbing permit for work not done under the supervision of a licensed master plumber (Act No. 266, Pub. Acts 1929, as amended by Act No. 260, Pub. Acts 1933).

Petition by Colin C. Hench for a writ of mandamus to compel the State Plumbing Board to issue a plumbing permit. Submitted March 14, 1939. (Calendar No. 40,184.) Writ denied June 5, 1939.

*William Holbrook,* for plaintiff.

*Thomas Read,* Attorney General, *Edmund E. Shepherd* and *Andrew De Maggio,* Assistants Attorney General, for the defendant.

SHARPE, J.    Petitioner is a licensed journeyman plumber, having become so in January, 1930. Prior to the filing of the present petition, petitioner contracted for and did install certain plumbing for a citizen of St. Joseph, Michigan, said city having a population of more than 5,000 and less than 10,000 people.

After the plumbing was completed, petitioner tendered to the State plumbing board the necessary permit and inspection fee.    On May 23, 1938, the money advanced was returned to petitioner and the permit denied for the reason that, ''plumbing permits are in no case issued to journeymen plumbers, nor are journeymen plumbers allowed to work on jobs in our jurisdiction, unless under the supervision of a licensed master plumber.''

Petitioner filed a petition for a writ of mandamus to compel the State plumbing board to issue the necessary permit and attacks the constitutionality of Act No. 266, Pub. Acts 1929, as amended by Act No. 260, Pub. Acts 1933 (Comp. Laws Supp. 1935, § 6688 *et seq.,* Stat. Ann. § 14.451 *et seq.*).

Petitioner contends that sections 4 and 5 of the act and Rule No. 140, adopted by the plumbing board, prohibit a ''journeyman plumber'' from pursuing his lawful occupation, trade or calling unless he subjects himself to the supervision of a ''master plumber;'' that such regulation is an invalid exercise of the police power, since it bears no reasonable relation to the public health or safety; that such regulation deprives a journeyman plumber of his property without ''due process of law;'' and that the apparent purpose of the act is to restrain trade

by creating a monopoly in "master plumbers," and to benefit this particular class of plumbers, thus denying to "journeymen plumbers" the equal protection of the law.

Defendant contends that petitioner, as a licensed "journeyman plumber" under the act and having accepted its benefits, may not in this proceeding challenge its constitutionality.

Constitution of 1908, art. 7, § 4, provides:

"The Supreme Court shall have a general superintending control over all inferior courts; and shall have power to issue writs of error, *habeas corpus,* mandamus, *quo warranto, procedendo* and other original and remedial writs, and to hear and determine the same. In all other cases it shall have appellate jurisdiction only."

Section 13535, 3 Comp. Laws 1929 (Stat. Ann. § 27.29), provides:

"The Supreme Court * * * shall have power to issue writs of error, certiorari, *habeas corpus;* mandamus, *quo warranto, procedendo,* prohibition, *supersedeas,* and all other original and remedial writs which may be necessary for the due execution of the law and the administration of justice, and the full and perfect exercise of its jurisdiction, and to hear and determine the same."

In *Toan* v. *McGinn,* 271 Mich. 28, 34, this court said:

"To support mandamus, plaintiffs must have a clear legal right to performance of the specific duty sought to be compelled; defendants must have the clear legal duty to perform such act; and it must be a ministerial act, one 'where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.' 38 C. J. p. 598. See, also,

*Globe Indemnity Co.* v. *Richer,* 264 Mich. 224; *Sezor* v. *Procter & Gamble Soap Co.,* 267 Mich. 128.''

See, also, *Chemical Bank & Trust Co.* v. *County of Oakland,* 264 Mich. 673.

The principle laid down in *People, ex rel. Township of La Grange,* v. *State Treasurer,* 24 Mich. 468, 477, is applicable to the case at bar. We there said:

''It is the inadequacy, and not the mere absence, of all other legal remedies, and the danger of a failure of justice without it, that must usually determine the propriety of this writ.''

See, also, *Giddings* v. *Secretary of State,* 93 Mich. 1 (16 L. R. A. 402).

In our opinion, plaintiff's petition for a writ of mandamus is a proper method of challenging the constitutionality of this act.

The question of whether the plumbing trade is subject to the police power is one of first impression in this State, but by the great weight of authority, statutes requiring the examination and licensing of plumbers, and providing rules and regulations for plumbing and drainage, in the interest of the public health, are valid as a proper exercise of the police power, and do not deprive members of the craft affected of personal rights guaranteed by the State and Federal Constitutions.

See annotations in 36 A. L. R. 1342; 57 A. L. R. 136; 5 L. R. A. (N. S.) 674; 8 L. R. A. (N. S.) 1116; 50 L. R. A. (N. S.) 421; *Douglas* v. *People, ex rel. Ruddy,* 225 Ill. 536 (80 N. E. 341, 8 L. R. A. [N. S.] 1116, 116 Am. St. Rep. 162); *State* v. *Gardner,* 58 Oh. St. 599 (51 N. E. 136, 41 L. R. A. 689, 65 Am. St. Rep. 785).

In *Kelley* v. *Judge of Recorder's Court of Detroit,* 239 Mich. 204, 214 (53 A. L. R. 273), this court said:

''Regulation of certain lawful trades, occupations, and business activities is a question for the legisla-

ture. Its determination comes within the proper exercise of the police power of the State unless affirmatively shown so unreasonable, oppressive, extravagant, and arbitrary as needlessly to invade property or personal rights as protected by the Constitution.''

See, also, 11 Am. Jur. pp. 1147–1151, §§ 336, 337. ·

In *State, ex rel. Winkler,* v. *Benzenberg,* 101 Wis. 172 (76 N. W. 345), the court said:

''Under modern systems of house-building and disposal of sewage, the dangers to the health of the entire public, arising from defective plumbing, are so great, and at the same time so insidious, that were the State unable to provide for the proper regulation and supervision of the plumber in his work, so as to minimize the danger to the public health from the escape of sewer gas, the State would certainly be unable to protect the public life and health in a most important particular. This power may be exercised by the legislature by demanding practical knowledge of his business on the part of the plumber, or it may be done by requiring inspection and supervision of his work by experts, or by both means combined; and when such regulations are brought before the courts, the question simply is whether they are really appropriate and reasonable measures for the promotion of the public health and safety, and hence are a valid exercise of the police power, or whether they go further than this, and unreasonably invade the right of the citizen to pursue a lawful business, under the guise of a police regulation.''

The above act classifies plumbers into two classes. Section 6 of the act provides, in part:

''A master plumber is any person skilled in the planning, superintending and the practical installation of plumbing, and who is familiar with the laws, rules and regulations governing the same. A journeyman plumber is any person other than a master

plumber, who, as his principal occupation, is engaged in the practical installation of plumbing. A master plumber may also work as a journeyman.''

The act regulates all members of the plumbing trade by requiring of both ''masters'' and ''journeymen'' a license. Section 8 of the act provides:

''The examination shall cover the theory and practice of plumbing, knowledge of the Michigan state plumbing code, interpretation of charts and blue prints, and plans of plumbing installation. The character, experience and fitness of the applicant shall also be taken into consideration. When oral examinations are given, a stenographic report of the examination shall be made and filed. The examination fee for a master plumber shall be twenty-five dollars and for a journeyman plumber, five dollars.''

The act also regulates each plumbing job or the 'business of plumbing' and requires a permit as a condition precedent to any installation. It provides that all plumbing installation must be made under the supervision of a master plumber.

Act No. 260, § 4, Pub. Acts 1933, provides:

''And that no plumbing shall be done, except repairing leaks, without a permit upon prescribed conditions.''

Section 5 of the act provides:

''No person, firm or corporation shall install plumbing unless at all times a licensed master plumber is in charge who shall be responsible for proper installation.''

Section 140 of the code of minimum standards provides:

''Permits for all plumbing work shall be issued only in the name of a person who is a regularly licensed master plumber. Exception. Permits are

granted to owners exercising constitutional privileges.''

In *Lochner* v. *New York,* 198 U. S. 45, 57 (25 Sup. Ct. 539, 3 Ann. Cas. 1133), the court said:

''The mere assertion that the subject relates though but in a remote degree to the public health does not necessarily render the enactment valid. The act must have a more direct relation, as a means to an end, and the end itself must be appropriate and legitimate, before an act can be held to be valid which interferes with the general right of an individual to be free in his person and in his power to contract in relation to his own labor.''

The State of Michigan under the act requires both a master and a journeyman plumber to be qualified; and that a permit be issued for each job with subsequent inspection (sections 2[b], 3). We are unable to see the necessity of requiring that all plumbing work be done under the supervision of a master plumber. The licensing of all plumbers, the plumbing permits and subsequent inspection should be sufficient to protect the public health and safety. In our opinion the requirement that all plumbing must be done under the supervision of a master plumber and Rule No. 140, which requires that permits for all plumbing work shall be issued in the name of a licensed master plumber only, has no application to public health and safety.

But in view of the fact that petitioner failed to comply with that part of the act providing for the obtaining of a permit prior to the time when installation of the plumbing was begun, he is not entitled to a writ of mandamus. No costs will be allowed as a constitutional question is involved.

CHANDLER, J., concurred with SHARPE, J. WIEST, and NORTH, JJ., concurred in the result.

Potter, J. I think Act No. 266, Pub. Acts 1929, as amended by Act No. 260, Pub. Acts 1933 (Comp. Laws Supp. 1935, § 6688 *et seq.;* Stat. Ann. § 14.451 *et seq.*), is void because unconstitutional for two additional reasons.

*First:* The title to the act is:

"An act to provide for the licensing of plumbers, the supervision and inspection of plumbing and the adoption and enforcement of minimum standards therefor by a plumbing board."

The Constitution of Michigan (1908), art. 5, § 21, provides:

"No law shall embrace more than one object, which shall be expressed in its title. No law shall be revised, altered or amended by reference to its title only; but the act revised and the section or sections of the act altered or amended shall be re-enacted and published at length."

Section 12, as amended by Act No. 260, Pub. Acts 1933, provides that any person who shall "fail to obey a lawful order, rule or regulation of the plumbing board, shall be guilty of a misdemeanor and may be fined not less than ten dollars nor more than fifty dollars, or imprisoned in the county jail for not more than thirty days, or both fine and imprisonment in the discretion of the court. Each day of violation shall be a separate offense."

There is nothing in the title of the act which indicates it contains any penal provisions, or that it creates any criminal offenses, or that it authorizes the State plumbing board to create or define any criminal offense or offenses. No person reading the title would dream any such provisions in relation to penalties and crimes were contained in the act. As said in *People* v. *Beadle,* 60 Mich. 22:

"If allowed to stand, the beneficent purpose of the Constitution is nullified and set at defiance.

"The section in the Constitution prohibiting legislation of this character, is a wise and wholesome one, intended to prevent legislators from being entrapped into the careless passage of sections and clauses in bills of which the title gives no intimation:   *   *   *

"The propriety of such an inhibition is apparent to all, and it must be observed and protected by the courts."

*Second:* The language of the act above quoted purports to authorize the State plumbing board to establish rules and regulations; and to make the violation of such rules and regulations a misdemeanor punishable by fine, imprisonment, or both.

One of the settled maxims of constitutional law is that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. Cooley's Constitutional Limitations (6th Ed.), p. 137. The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. *Locke's Appeal,* 72 Pa. 491 (13 Am. Rep. 716).

"The true distinction (said Ranney, J., in *Cincinnati, W. & Z. R. Co.* v. *Com'rs of Clinton County,* 1 Ohio St. 77, 88) is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made."

The authorities last above cited were approved by this court in *King* v. *Concordia Fire-Insurance Co.,* 140 Mich. 258 (6 Ann. Cas. 87).

The act in question purports to delegate to the State plumbing board the power to make rules and regulations. What such rules and regulations may be is attempted to be vested in the discretion of the State plumbing board. It cannot be said the legislature merely delegated to the State plumbing board the power to determine a fact or state of things upon which the law makes, or intends to make, its own action depend; or that it merely delegated to the State plumbing board discretion as to the execution of the law. On the contrary, it purports to delegate to the State plumbing board the authority to make the rules and regulations, and to change such rules and regulations whenever in its discretion it might so desire. To declare what shall constitute a crime, and how it shall be punished, is an exercise of the sovereign power of a State and is inherent in the legislative department of the government. Unless expressly authorized by the Constitution, this power cannot be delegated by the legislature to any other body or agency. The word ''crime'' is applicable to both a felony and misdemeanor. The words ''offense'' and ''crime'' are synonymous when applied to convictions for violation of a statute of a public nature.

''Whenever a person does an act which is prohibited by law, which act is punishable by fine, penalty, forfeiture, or imprisonment, he commits a crime.'' *People* v. *Hanrahan,* 75 Mich. 611 (4 L. R. A. 751).

The title of the statute in question contains no intimation the act purports to define or punish crimes. The attempt upon the part of the legislature to vest in the State plumbing board the power and authority to create and define crimes is an unconstitutional attempt to delegate legislative power.

I concur with Mr. Justice Sharpe for the reasons stated by him and for these additional reasons.

Bushnell and Chandler, JJ., concurred with Potter, J.

Butzel, C. J. While I concur in the result of Mr. Justice Sharpe's opinion denying the writ, I cannot join in the reasoning by which that result was reached. I fail to find Act No. 266, Pub. Acts 1929, as amended by Act No. 260, Pub. Acts 1933 (Comp. Laws Supp. 1935, § 6688 *et seq.*, Stat. Ann. § 14.451 *et seq.*) unconstitutional either because of the distinction made therein between master and journeyman plumbers, or because of the provision that all plumbing, exclusive of repairing leaks, must be performed with the supervision of a licensed master plumber and under a permit issued in his name.

Despite arguments now obsolete, like those found in the majority opinion in *Lochner* v. *New York,* 198 U. S. 45 (25 Sup. Ct. 539, 3 Ann. Cas. 1133), the courts, almost without exception, have recognized the reasonable regulation of the plumbing trade as a valid exercise of the police power. See the cases collected in 36 A. L. R. 1342; 57 A. L. R. 136. Under modern conditions of life it is evident that the dangers arising from defective plumbing are so great that the public welfare demands that every effort be made to minimize the possibility of injury to health through the escape of sewer gas or seepage and the spread of contagious disease, as well as to obviate the inconveniences and offensive discomforts as well as fire hazards caused by plumbing improperly installed.

The foregoing opinion, as I read it, does not quarrel with the power of the legislature, in the abstract, to enforce such regulation of plumbers, but holds that there was no "necessity" for the method here

employed and that this method is unreasonably discriminatory and burdensome to the point of constitutional inhibition.

It has never been the function of this court to pass upon the necessity or wisdom of legislation. We exercise no veto power. Before a deliberate act of the legislature is stricken down, it must be shown unequivocally to offend some provision of the Constitution of the United States or of the State of Michigan. Whatever may be our personal conviction and judgment of the value or motives of the statute before us, our inquiry is narrowed to the single issue of constitutionality. We should literally observe the principles laid down by the Wisconsin court in the language which Mr. Justice SHARPE has quoted:

"This power (of regulating plumbers) may be exercised by the legislature by demanding practical knowledge of his business on the part of the plumber, or it may be done by requiring inspection and supervision of his work by experts, or by both means combined; and when such regulations are brought before the courts, the question is simply whether they are really appropriate and reasonable measures for the promotion of the public health and safety, and hence are valid exercise of the police power, or whether they go further than this, and unreasonably invade the right of the citizen to pursue a lawful business, under the guise of a police regulation." *State, ex rel. Winkler,* v. *Benzenberg,* 101 Wis. 172 (76 N. W. 345).

There is no doubt that inspection of plumbing may be constitutionally provided for; no question is raised as to the validity of 2 Comp. Laws 1929, § 6705 (Stat. Ann. § 14.471). It is equally settled that requiring all members of the plumbing trade to prove their competency by submitting to qualifying examinations and issuing certificates or licenses to

successful applicants is a valid exercise of legislative power. See, for example, *Douglas* v. *People, ex. rel. Ruddy,* 225 Ill. 536 (80 N. E. 341, 8 L. R. A. [N. S.] 1116, 116 Am. St. Rep. 162) ; *Singer* v. *State,* 72 Md. 464 (19 Atl. 1044, 8 L. R. A. 551) ; *Beltz* v. *City of Pittsburg,* 211 Pa. 561 (61 Atl. 78), affirming 26 Pa. Super. 66. The imposition of minimum standards of competency upon the persons actually performing plumbing work certainly bears a reasonable relation to the end sought to be achieved; indeed, it is one of the most effective methods of minimizing the dangers to the public resulting from inefficient plumbing installation, and follows the same principle of licensing which this court has long sustained in the case of professions or trades requiring learning and skill. To assure enforcement of the standards so erected, it is likewise natural and proper for the legislature to prohibit work by non-licensed plumbers. See *People* v. *Rogers,* 74 Col. 184 (219 Pac. 1076) ; *Commonwealth* v. *Beaulieu,* 213 Mass. 138 (99 N. E. 955, Ann. Cas. 1913 E, 1080), and the cases cited in these opinions.

It is not argued that the standards required by the examinations outlined in section 8 of the act are unreasonably harsh or unfair, nor is it claimed that such examinations are an inaccurate or unreasonable index to the skill and ability possessed by the applicant. Petitioner suggests, however, that it was improper for the legislature to provide one type of examination for master plumbers and another type for journeymen, and that the distinction made in the act between the two divisions of the plumbing trade, as set forth in section 6, is an unreasonable and illegal one. Classification based on degree of skill or ability is the theory behind all license legislation, and it has been consistently upheld by the courts. See the cases collected in 12 Am. Jur. p. 166, note 17.

Arising from medieval trade customs, the distinction between master plumbers and journeyman plumbers has been preserved in the statute and made to depend on the ability of the individual worker, rather than upon years of apprenticeship or his status as an employer of others. The master plumber, as defined by section 6, is one skilled in the planning, superintending and practical installation of plumbing and familiar with the laws, rules and regulations governing it. He must submit to a more difficult examination and pay a higher license fee than the journeyman plumber under the act. The journeyman is defined as a plumber other than a master plumber whose principal occupation is the practical installation of plumbing. He is directed to submit to a less difficult examination and must pay only a small license fee. The distinction between these two classes has been recognized in various ways in plumbing regulations of other States which have survived constitutional objections in the courts. See, for example, *People, ex rel. Nechamcus,* v. *Warden of the City Prison,* 144 N. Y. 529 (39 N. E. 686, 27 L. R. A. 718); *Louisville* v. *Coulter,* 177 Ky. 242 (197 S. W. 819, L. R. A. 1918 A, 811). Cf. *St. Louis* v. *Bender,* 248 Mo. 113 (154 S. W. 88, 44 L. R. A. [N. S.] 1072). The distinction is not without reason. A master plumber, having complete charge of plumbing work, should be skilled in planning and superintending and able to understand charts and specifications to a degree not required of journeymen actually doing the work. A master plumber might well be required to understand the principles of sanitation, or the proper installation of hot water systems, heaters and boilers to prevent fire and explosions while less proficiency is demanded by the work of the journeyman plumber. I do not think the legislature is prevented from recognizing in its regulation of the plumbing

trade a distinction between master and journeyman which the trade itself has preserved for many years.

If there is any discrimination in this procedure, however, it is discrimination to the benefit rather than to the detriment of journeyman plumbers, of which class petitioner is a member. Had the legislature desired, it could have imposed rigorous regulations and standards indifferently upon the entire plumbing trade, so long as they were reasonably bound up with public protection. With such regulations only highly skilled workmen might possibly have been able to comply. The legislature might have required all plumbers to demonstrate the same understanding of charts and blueprints, plans of installation, complicated architects' specifications, as well as familiarity with the plumbing code—accomplishments demanding training, ability and experience. Instead of imposing such standards and thereby excluding many less skilled plumbers, the legislature sought to allow journeymen to continue working in their trade even though they lacked the qualifications of master plumbers. If anything, this preserved the rights of journeymen rather than restricted them.

When the journeyman attains sufficient competency, the act permits him to become a master plumber by qualifying examination. There is nothing in the statute, it should be noted, which "freezes" the status of any person engaged in the plumbing business. It does not make the journeyman dependent upon a master plumber by requiring an arbitrary period of apprenticeship or association. The journeyman can take the examination, demonstrate his ability, pay the fee, and obtain a license as a master without any burdensome conditions. Until he establishes his qualifications, however, the legislature has provided that the public interest should

not be left unprotected. If the journeyman himself is unskilled in the "practical installation of plumbing," the law provides in section 5 that a master plumber who is so skilled should remain in charge and be "responsible for proper installation." If petitioner is unable to qualify as a master plumber because he is unfamiliar with the "laws, rules and regulations" of the plumbing trade, he must work under the supervision of a master who is familiar with these rules and regulations.

I see nothing in this procedure which is arbitrary or capricious. Short of prohibiting journeyman plumbers from working altogether if they cannot establish their capacity, how better could the public interest in safe plumbing installation be protected? If petitioner's independence is restricted by the supervision of a master plumber, he has only to satisfy the plumbing board that he is competent to work without supervision. If, however, he cannot meet the standards of a master, I do not see how the Constitution anchors upon the public the burden of his deficient workmanship.

It is argued that provisions for plumbing permits and subsequent inspection "should be sufficient to protect the public health and safety." Whether the legislature has been more zealous in its desire to safeguard the public health than we might think was strictly justified is not, as above indicated, a question which concerns us. The legislature knew that the very nature of plumbing installation renders a completed job incapable of full inspection and it might also have considered the ease with which defective workmanship can be concealed. It cannot be said to be unreasonable to require a licensed master plumber to be in charge of installations under such conditions. If inspection after installation is valid, how is supervision during installation invalid? Be-

cause the legislature has already imposed some safeguards against defective plumbing, I know of no constitutional reason preventing it from making doubly sure and certain the protection to the public which was sought.

Section 140 of the code of minimum standards issued by the plumbing board, providing for granting permits only in the name of a regularly licensed master plumber, is not an unreasonable fulfillment of the mandate of the statute. It is a practical method of assuring supervision of plumbing work as the legislature has directed.

I also find myself unable to concur in the views of Mr. Justice POTTER as expressed in his separate opinion. The title to the act under consideration "An act to provide for the licensing of plumbers, the supervision and inspection of plumbing and the adoption and enforcement of minimum standards therefor by a plumbing board," is, I think, sufficient indication of the regulatory and punitive measures embodied within it. The case of *People* v. *Beadle,* 60 Mich. 22, cited by Mr. Justice POTTER, was distinguished from a situation like the present as early as *Hartford Fire Ins. Co.* v. *Raymond,* 70 Mich. 485, 500. This court has consistently held that the omission from the title of an act to regulate a specific business or trade of a statement that its object is also to punish violators thereof does not render it subject to constitutional objection. *People* v. *O'Neil,* 71 Mich. 325; *People* v. *Miller,* 88 Mich. 383; *Johnson* v. *Sergeant,* 168 Mich. 444 (2 N. C. C. A. 334). See, also, *People* v. *Snowberger,* 113 Mich. 86 (67 Am. St. Rep. 449). It should be pointed out, moreover, that the penal section of the present statute is in no way involved in the present application for mandamus.

Nor does the act seem to me to be vulnerable to the charge that it occasions an unlawful delegation of legislative power to the plumbing board. The right to allow an administrative agency to adopt rules and regulations to effectuate the purpose of the legislature is well recognized. *United States* v. *Grimaud,* 220 U. S. 506 (31 Sup. Ct. 480); *People* v. *Soule,* 238 Mich. 130. See, also, *Sherlock* v. *Stuart,* 96 Mich. 193 (21 L. R. A. 580). In the *Soule Case, supra,* it was also held that where a statute provides a punishment for violating the regulations or orders of an administrative body, the power to create a crime is not delegated to the body, but is still retained by the legislature. See, also, *Hurst* v. *Warner,* 102 Mich. 238 (26 L. R. A. 484, 47 Am. St. Rep. 525). However, since these latter questions were not raised by either party in the court below, nor on this appeal, I think that we should properly refrain from deciding them.

For these reasons, therefore, I think that the statute is free from the constitutional objections here asserted, and the writ accordingly should be denied because of constitutional grounds.

McALLISTER, J., concurred with BUTZEL, C. J.