NATIONAL BANK OF DETROIT *v.* STATE LAND
OFFICE BOARD.

1. WORDS AND PHRASES—CASH.

The term ''cash,'' as used in statutes relative .to payment of
taxes, is a term of broad and not restricted import, and may
consist of checks, certificates of deposit, bank drafts, and
post-office money orders acceptable to the receiving officer as
well as legal tender.

2. SAME—CASH—LEGAL TENDER.

The term ''cash'' is not limited to legal tender.

3. TAXATION—PURCHASER AT SCAVENGER SALE—PAYMENT—CASH—
BANK DRAFT—STIPULATIONS.

Purchaser of land at scavenger sale which gave, within time
prescribed by statute for payment in cash, a bank draft ac-
ceptable to State land office board receiving officer, which
draft was honored and paid upon presentation, sufficiently
complied with the intent and meaning of the statute by mak-
ing payment by draft and stipulation that purchaser had made .
payment in cash was binding on all interested parties (1 Comp.
Laws 1929, § 339; Act No. 155, § 7, Pub. Acts 1937, as
amended by Act No. 244, Pub. Acts 1939).

4. SAME—SCAVENGER SALE—RIGHT TO MEET HIGHEST BID.

The right to meet the highest bid at so-called scavenger sale
is limited to parties having an interest in the land sold at
the tax sale when the State bid in the property where statute
so limited the right at time of the scavenger sale and sub-
sequent amendment thereof validating transfer of right to
meet highest bid would be inapplicable to property sold to a
purchaser who became entitled to a deed prior to effective
date of such amendatory act (Act No. 155, § 5a, Pub. Acts
1937, as added by Act No. 363, Pub. Acts 1941).

5. MANDAMUS—PUBLIC OFFICES.

Mandamus will issue where right is clear and specific and public
officers or tribunals refuse to comply with their duty.

6. SAME—ADEQUACY OF RELIEF.

Inadequacy, not mere absence, of all other legal remedies, and
danger of failure of justice without it, usually determines
propriety of issuance of writ of mandamus; relief being

granted if practicable; and where a right is single and specific it usually is practicable.

7. SAME—DEED FROM STATE LAND OFFICE BOARD—MEETING HIGHEST BID—ADEQUACY OF RELIEF.

Plaintiff seeking mandamus to compel State land office board to execute and deliver deed to it of land to which State had acquired title at tax sale and that was sold at so-called scavenger sale was entitled to writ of mandamus where plaintiff was entitled to deed before amendatory act permitting transfer of right to meet highest bid became effective, such relief was the only adequate relief and was an appropriate remedy (Act No. 155, § 7, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939; § 5a, as added by Act No. 363, Pub. Acts 1941).

Petition by National Bank of Detroit for mandamus to compel State Land Office Board to deed to petitioner, and not to defendant Paramount Investment Company, lands located in the city of Detroit. Submitted December 2, 1941. (Calendar No. 41,675.) Writ granted January 5, 1942.

*Dykema, Jones & Wheat* (*James D. Tracy,* of counsel), for petitioner.

*Griffin, Emery & Seely* (*Louis C. Baker* and *Vincent J. Gilleo,* of counsel), for Paramount Investment Company.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Peter E. Bradt,* Assistant Attorney General, for State Land Office Board.

SHARPE, J. National Bank of Detroit petitions for a writ of mandamus to compel the State land office board to issue a deed to it of certain lands located in the city of Detroit.

The facts have been stipulated and in substance are as follows: On May 3, 1938, the State of Michigan purchased at the annual tax sale held pursuant

to the provisions of Act No. 206, Pub. Acts 1893, as amended, 1 Comp. Laws 1929, § 3389 *et seq.,* as amended, the following described premises:

"Lots 14, 15 and 16 of plat of subdivision of the Walter Crane farm, private claim 39 according to the plat thereof as recorded in liber 5 on page 29 of plats, and more particularly known as the northwest corner of West Jefferson and Junction avenues, known as 5600 West Jefferson ave., located in the city of Detroit, Wayne county, Michigan."

On November 3, 1939, the State of Michigan acquired title to said premises in fee simple absolute and the State of Michigan received a quitclaim deed from the auditor general of the State of Michigan covering the said premises, which deed was dated November 29, 1939, and was recorded July 3, 1940. The premises were withheld from the auction sale of 1940, held by the State land office board under the provisions of Act No. 155, Pub. Acts 1937, as amended, at the request of the city of Detroit. The taxes on the premises were not redeemed or paid by the municipality and on March 21, 1941, the premises were offered at the auction sale held by the board. Petitioner was the high bidder at the sale. The amount of petitioner's bid, $5,260, was sufficient under the statute and was paid to the board in cash within 24 hours of the time the bid was made. Petitioner received the usual certificate of purchase.

Thereafter, on April 18, 1941, respondent Paramount Investment Company made application to the State land office board to "meet" the high bid, paid the board one-tenth of the amount of petitioner's bid, and requested a land contract.

At the time of the May, 1938, tax sale, Paramount Investment Company had no interest whatsoever in

the premises. On March 20, 1941, being the day before the above-described auction sale, the investment company entered into an agreement with the agents of Charles T. Tittmann and Lillian Winterhalter, who were owners of record of said premises at the time of the tax sale of May, 1938, whereby the investment company should receive from Tittmann and Winterhalter quitclaim deeds to be executed after the auction sale to be held on March 21, 1941. On April 3, 1941, the investment company paid $3,000, which included agent's commission, to Tittmann and Winterhalter and quitclaim deeds were executed and delivered to the company.

Prior to the institution of this proceeding, the State land office board notified petitioner and Paramount Investment Company it had determined that the investment company was an "owner" of the property entitled, under Act No. 155, Pub. Acts 1937, as amended, to meet the highest bid, and as such would receive a land contract after 20 days. The injunction of this court restraining respondent, State land office board, from conveying the premises was issued before further action by the board; and no conveyance of the premises has been made. Neither petitioner nor Paramount Investment Company has requested or received a return of the moneys paid by them to the board.

On May 26, 1941, petitioner instituted proceedings in this court seeking a writ of mandamus; and on June 3, 1941, this court issued its order directing respondents to show cause to the court why a peremptory writ of mandamus should not be issued to compel the execution and delivery by respondent State land office board of the deed demanded by petitioner.

Subsequent to the signing of the stipulation of facts, the Paramount Investment Company peti-

tioned this court to strike from the stipulation of facts the following sentence: ''Subsequently, within 24 hours of said bid, plaintiff, National Bank of Detroit, made payment in cash of the amount of $5,260 to the State land office board.''

Upon the filing of the above petition, we directed that the matter be referred to the circuit court of Wayne county to make a finding .of facts as to this issue. The hearing was held before a circuit court commissioner who made the following finding of facts:

That on March 21, 1941, the National Bank of Detroit drew a draft on itself in the amount of $5,410 payable to ''Tax Bidding Service,'' signed by an officer of the National Bank of Detroit authorized to draw such drafts; that on the same day, at approximately 1:30 p.m., the National Bank of Detroit, through its agent, Paul P. Sukenik, made a bid of $5,260 for the premises involved here at the auction of the State land office board; that Paul P. Sukenik on that day, at 2:30 p.m., made payment to the board for that property by depositing with its cashier the draft of the National Bank of Detroit in the amount of $5,410, indorsed by Sukenik, and received from the cashier of the board a certificate of purchase certifying that the National Bank of Detroit had bid in the described lands and ''deposited in cash with this board the full purchase price thereof;'' that the difference between the bid price of these lands and the draft was applied by Sukenik on other lands bid in at the board at that time; that the board accepted the draft of the bank as cash, along with other drafts, cashier's checks, money orders and certified checks and deposited the same the following morning in the Detroit Bank, their financial agent; that the depositary of the

board, the Detroit Bank, honored the draft of the National Bank of Detroit on March 22, 1941, and that the draft was later honored by the National Bank of Detroit; and that if, on March 22, 1941, the board had demanded cash in exchange for the draft of the National Bank of Detroit, on its deposit of the draft in the Detroit Bank, the Detroit Bank would have made cash available on the morning of March 22, 1941.

We must first determine whether the finding of facts of the circuit court commissioner modifies the stipulation of facts. It is urged by petitioner that the defendant Paramount Investment Company is bound by the agreed stipulation of facts; and that petitioner complied with the provisions of the statute relative to the *payment of cash within 24 hours of the bid.*

The legislature in 1899 amended Act No. 20, § 3, Pub. Acts 1842, by Act No. 228, Pub. Acts 1899, which is now 1 Comp. Laws 1929, § 339 (Stat. Ann. § 3.661), which provides:

"Whenever any check or bank draft shall be tendered for the payment of any debt, taxes or other obligation due to the State or to any municipality therein, such check or draft shall operate as a payment made on the date said check or draft was received and accepted by the receiving officer, if it shall be paid on presentation without deduction for exchange or cost of collection: *Provided, however,* That no receiving officer shall be required to receive in payment of any debt, taxes or other obligation collectible or receivable by him any tender other than gold or silver coin of the United States, United States treasury notes, gold certificates, silver certificates, or national bank notes."

In *Backus* v. *Killmaster,* 162 Mich. 594, we held that a post-office money order was sufficient to re-

deem from a tax sale. We there said: "It is a matter of common knowledge that the transmission of money by post-office order is lawful, customary, and safe."

In *C. N. Ray Corporation* v. *Williams*, 255 Mich. 564, we held:

"Where check given for taxes was deposited in bank by city treasurer, credited to his account, and charged to drawer's account, in which there was sufficient funds to pay it, it was paid (1 Comp. Laws 1929, § 339)." (syllabus)

In *Bingham* v. *County of Montcalm*, 251 Mich. 651, we said:

"As stated by the trial court, the term 'cash' is a term of broad and not restricted import. A certificate of deposit properly indorsed in blank, payable on presentation, is readily converted into cash, and is commonly treated as such in business transactions. In *Glines* v. *Bank*, 132 Mich. 638, 643, it is said:

" 'Checks are deposited as cash, pass current as cash, the amount thereof paid out by the bank as cash, and the same check is often used to liquidate several debts. Oftentimes the holder of a check obtains cash for it from a bank instead of depositing it.' "

From the authorities cited the term "cash" is not limited to legal tender and it is our opinion that petitioner has sufficiently complied with the intent and meaning of the statute by making payment by draft. It follows that the stipulation as signed is binding upon all interested parties.

It is urged by Paramount Investment Company that it had on April 18, 1941, the "right to match" the "highest bid" made at the auction sale.

The applicable part of Act No. 155, § 7, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 3723–7, Stat. Ann. 1940 Cum. Supp. § 7.957), is as follows:

"Any person who, at the time of the tax sale, had any interest in any parcel of land so sold, shall have the right for a period of 30 days after such public sale as in this section provided, to meet the highest bid. * * * In the event that no such bid is met as herein provided, the said highest bidder shall be entitled to receive a quitclaim deed."

In *Stickler* v. *State Land Office Board,* 297 Mich. 271, we held that purchasers at the county treasurer's sale for delinquent tax for a year subsequent to the year for which sale to the State had been made had no interest in the property at the time the State made its purchase and were not entitled to meet the high bid at the auction sale of State lands pursuant to Act No. 155, § 7, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939. And in *Redford Union Schools, Dist. No. 1,* v. *State Land Office Board,* 297 Mich. 535, we held that the right to meet the highest bid at the scavenger sale is limited to parties having an interest in the land sold at the tax sale when the State bid in the property.

In view of the above authorities, it follows that the Paramount Investment Company, having no interest in the premises on May 3, 1938, had no right to match the bid as provided in section 7 of the above act. But respondent investment company claims the right to match the bid under Act No. 363, Pub. Acts 1941. Petitioner urges that its right to a deed arose March 21, 1941, nearly three months prior to the time the above act went into effect; that on March 21, 1941, it had a right which could not be taken from it without due process of law; and

that if the above act is to be given retroactive effect, it will impair the obligation of a contract.

On June 19, 1941, Act No. 363, Pub. Acts 1941, amending Act No. 155, Pub. Acts 1937, as amended by Acts Nos. 29, 244, and 329, Pub. Acts 1939, became effective. It added section 5a (Stat. Ann. 1941 Cum. Supp. § 7.955[1])* which provides in part as follows:

"All executory contracts and conveyances heretofore executed and delivered by the board or department to heirs, devisees, grantees, successors, or assigns of persons who at the time of the tax sale had any interest in the land described in such contracts or conveyances are hereby ratified, confirmed and declared to be valid in so far as the assignability of the privileges accorded to former owners is concerned. All devises, conveyances, or assignments of such privileges heretofore made at any time prior to the expiration of the 30-day period during which bids may be met by former owners under the provisions of sections 6 and 7 hereof, if made in compliance with the laws of this State relating to devises, conveyances or transfers of interests in land, are hereby declared to be valid and to have devised, conveyed, assigned and transferred such privileges to the devisees, assignees or grantees therein named, and all exercise of such privileges by such devisees, assignees or grantees is hereby declared valid and to have vested in such devisees, assignees or grantees the right to receive from the board or department, as the case may be, a contract or conveyance of the land therein described, subject to the provisions of this act: *Provided, however,* That such devisees, assignees or grantees, have not surrendered their certificates of purchase and received or thereby become entitled to receive a refund of their purchase moneys or down payments."

---

* This act also amended section 7, *supra.*—Reporter.

In our opinion the rights of petitioner as a *bona fide* bidder on March 21, 1941, must be considered in determining whether the above amendment is retroactive. Petitioner made its bid under Act No. 155, § 7, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939, which provided:

"Under rules and regulations of the board, the several parcels of land appearing on such lists shall be offered for sale separately at the office of the respective county treasurers to the highest bidder at said sale. * * * Any person who, at the time of the tax sale, had any interest in any parcel of land so sold, shall have the right for a period of thirty days after such public sale as in this section provided, to meet the highest bid. * * * In the event that no such bid is met as herein provided, the said highest bidder shall be entitled to receive a quitclaim deed * * * covering the parcel of land so purchased, executed on behalf of the State of Michigan by the board, with the seal of the board attached."

On March 21, 1941, petitioner in reliance upon the provisions of the statute paid in cash the sum of $5,260. This payment was made subject to one condition, namely, that the owner, having priority, could match the bid within 30 days. The offer of the State land office board was accepted by petitioner. Upon failure of the owner, having priority, to match the bid within the prescribed time, petitioner became entitled to a deed of the premises and it became the duty of the State land office board to execute and deliver to petitioner such deed. It follows that Act No. 363, Pub. Acts 1941, has no application to property sold by the State land office board to which the purchaser became entitled to a deed prior to the effective date of the act.

The further question of whether petitioner is entitled to the remedy of a writ of mandamus is raised. The law upon this subject is well stated in *Chemical Bank & Trust Co.* v. *County of Oakland,* 264 Mich. 673, 678, 679, where the court quoted with approval the language from *People, ex rel. Township of LaGrange,* v. *State Treasurer,* 24 Mich. 468, 477:

" 'In cases where the right is clear and specific, and public officers or tribunals refuse to comply with their duty, a writ of mandamus issues for the very purpose, as declared by Lord Mansfield, of enforcing specific relief. It is the inadequacy, and not the mere absence, of all other legal remedies, and the danger of a failure of justice without it, that must usually determine the propriety of this writ. Where none but specific relief will do justice, specific relief should be granted if practicable. And where a right is single and specific it usually is practicable.' "

See, also, *Hench* v. *State Plumbing Board,* 289 Mich. 108.

In the case at bar, the only adequate relief that petitioner can have is a deed of the premises; and mandamus is an appropriate remedy.

Petitioner is entitled to a deed of the premises in question, and, if necessary, the writ will issue. Petitioner may recover costs against Paramount Investment Company.

CHANDLER, C. J., and BOYLES, NORTH, STARR, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.