CITY OF SIOUX FALLS, Respondent v. KADINGER, Appellant

(59 N. W.2d 631)

(File No. 9371. Opinion filed July 13, 1953)
Rehearing denied September 8, 1953

**Tom Barron, John E. Burke,** Sioux Falls, for Plaintiff and Respondent.

**Blaine Simons,** Sioux Falls, for Defendant and Appellant.

RUDOLPH, J.  Following our decision in City of Sioux Falls v. Kadinger, 74 S.D. 217, 50 N.W.2d 797, the city commission. enacted an amended ordinance omitting therefrom that provision requiring that an applicant for a plumber's li-

cense must establish by the affidavit of a master or journeyman plumber that he has served at least three years as an apprentice. We held in the prior case that the portion of the ordinance requiring that the applicant for a license shall have served at least three years as an apprentice plumber was unconstitutional and because of this the entire ordinance was invalid.

Appellant refused to obtain a license under the amended ordinance, was fined for working as a plumber without such license, and has appealed.

The amended ordinance appears to be a complete act in itself. It first defines plumbing as follows:

"10.101. Definitions. Plumbing in this title shall be deemed to mean the profession, art or trade of, and all work done and all matters used in and for (a) introducing, maintaining and extending a supply of water through a pipe or pipes or any appurtenances thereof in a building, structure or establishment; (b) installing, connecting or repairing any system of drainage whereby foul waste, rain or surplus water, gas, odor, vapor or fluid is discharged or proposed to be discharged through a pipe or pipes from any building, structure or establishment; (c) connecting any building, structure or establishment with any service pipe, water pipe, public main or other underground structure; (d) performing all classes of work generally done by plumbers.

"The plumbing system of a building includes the water supply distributing pipes; the fixtures and fixture traps; the soil waste and vent pipes; the house drain and house sewer; the storm-water drainage with their devices, appurtenances and connections, all within or adjacent to the building, structure or premises."

The next section of the ordinance classifies plumbers as master, journeyman and apprentice as follows:

"A Master Plumber is a person who assumes responsible charge and direction of other persons in the installation of plumbing as hereinbefore defined, and must hold a Master Plumber's License, issued within the current calendar year by the Board of Plumbing Examiners of the city.

"A Journeyman Plumber is a person who performs the manual work of installing plumbing and drainage only under

the control of a licensed Master Plumber, and must hold a Journeyman Plumber's License, issued within the current calendar year by the Board of Plumbing Examiners of the city.

"An Apprentice Plumber is a person who performs the manual work of plumbing and drainage under the immediate supervision, direction and control of a licensed Master Plumber or a licensed Journeyman Plumber."

The ordinance then provides for a plumbing inspector, describes his duties and requires that before commencing any plumbing work in the city a plumber must obtain from the plumbing inspector a written permit. The ordinance also provides for a Board of Plumbing Examiners consisting of the plumbing inspector, the city engineer, a master plumber and a journeyman plumber licensed by the city. The Board of Plumbing Examiners is authorized to adopt such rules and regulations as shall be necessary for the examination of applicants for plumbing licenses and "to examine all such applicants as to their knowledge of the rules and regulations governing plumbing work and to determine the qualifications and fitness of such applicants for the license applied for and to grant licenses applied for and renewals thereof to qualified applicants." It is further provided that "the examination of applicants for plumbing licenses shall be of such a character as to test the fitness and qualifications of the applicants for the licenses applied for and ability to properly carry on the plumbing business and work authorized under the license applied for in such manner as to safeguard and preserve the public health, safety and general welfare, and in compliance with the regulations and ordinances governing such work."

For the purpose of defraying expense of giving such examination it is required that a $10 fee accompany the application. A license fee of $50 per year is required of a master plumber and $10 a year of a journeyman plumber. Before a license issues to a master plumber it is required that he give a $1,000 bond in favor of the city conditioned for the faithful performance of all duties required by ordinance and that the obligors will hold the city harmless from all damage sustained by reason of neglect or incompetence of such master plumber or journeyman or apprentice working under

his supervision. All persons are prohibited from engaging in the business of plumbing without first securing a license and paying the license fee with the exception that persons holding a master or journeyman plumbers' license at the time the ordinance became effective are not required to take the examination required by the ordinance to become licensed.

No fact question is presented. The questions raised by appellant go to the validity of the ordinance.

■■■ We must premise our consideration of this ordinance upon the established law that a municipality acting pursuant to the power granted by SDC 45.0201(64) may in the interest of the public health require the examination and licensing of persons engaged in the business or occupation of plumbing. The restriction upon this power being that its exercise must be reasonable and not unduly abridge the right of a citizen to pursue a lawful vocation. City of Sioux Falls v. Kadinger, 74 S.D. 217, 50 N.W.2d 797. It is also fundamental in our law that all reasonable intendments must be indulged in favor of this ordinance, which should be upheld unless its infringement of constitutional restrictions is so plain as to admit of no reasonable doubt. Mundell v. Graph, 62 S.D. 631, 256 N.W. 121.

■■ As stated above, although this ordinance purports to amend the prior ordinance held invalid, it is, nevertheless, complete in itself, and is in effect a new enactment with the part held objectionable omitted. It does not, therefore, fall within the rule that an amendment of a void ordinance cannot make the void ordinance valid. Board of Commissioners of the City of Newark v. Grodecki, 33 A.2d 115, 21 N.J.Misc. 241; City of LaCrosse v. Elbertson, 205 Wis. 207, 237 N.W. 99; Sutherland Statutory Construction, 3d Ed., § 1904.

■■ The present ordinance provides that a license will issue without examination to a person holding a master or journeyman plumber's license at the time the ordinance became effective. Appellant contends that this provision discriminates against him. This contention must be ruled adversely to appellant under the authority of State v. Doran, 28 S.D. 486, 134 N.W. 53.

■ ■ It is further contended that there are no standards fixed for the examinations required, and that as a result the examining board may favor one applicant over another. We see no merit in this contention. The ordinance at the outset defines plumbing. Plumbers are classified according to certain work performed. The examining board consists of the plumbing inspector, the city engineer, a master and a journeyman plumber, all qualified to determine the fitness of an applicant for a license. It is required that the examination shall be of such a character to test the fitness and qualifications of the applicants for the license applied for. The ordinance further provides that should an applicant be aggrieved by the action of the Board of Plumbing Examiners he may have such action reviewed by the Board of City Commissioners. These provisions make it clear, we believe, that the Examiners are required to examine an applicant on the subject of plumbing as defined in the act, which distinguishes this case on this issue from People v. Brown, 407 Ill. 565, 95 N.E.2d 888. The act creates a board of capable examiners, and requires that the examination test the fitness and qualifications of the applicant for the license applied for. These provisions together with the definition of plumbing and the classification of plumbers are sufficient as an expression of legislative will and the execution of this will consists of administrative functions only. There is no delegation of legislative power. State v. Stark, 100 Mont. 365, 52 P2d 890. There is no showing of any kind that the Examining Board is acting or has acted so as to favor one applicant over another, and this court will not presume that the Board's acts will be unreasonable, unfair or arbitrary. State v. Stark, supra.

■ There is no illegal discrimination when a public body acts under its police power if the classifications set up are reasonable. Annotation 22 A.L.R. 816. Under the ordinance it is the master plumber who assumes responsibility and it is required that he be bonded. The journeyman is responsible only to the master plumber under whom he works. This distinction it seems to us is ample justification for the difference in the license fee. It is not only the work of the master plumber but the work of the journeyman whom he

employes for which the master is responsible. The inspection of the work and the cost thereof relates primarily therefore to the responsibility assumed by the master plumber.

We may concede as held in the very recent Illinois case, Schroeder v. Binks, Director of Registration and Education, Ill.Sup., 113 N.E.2d 169, that there is no distinction between the mechanical ability of a master and journeyman plumber. It is conceded in this case that the Examining Board makes no distinction in giving the examinations. The same examination is given to applicants for either a journeyman or master license. Anyone passing the examination may become either a master or a journeyman plumber at his option. To qualify as a journeyman he pays a $10 fee and as a master, $50. As stated above, we believe this difference in fees is reasonable and justified by reason of the responsibility assumed by the master. This is not the artificial classification which was condemned in the Illinois Case. The Illinois law required that an applicant for a license as a master plumber must have been licensed as a journeyman for at least one year.

■ Under the ordinance now before us there is no denial of the right to work. For example, if the defendant had taken and passed the examination, it was up to him whether he qualified as a master or a journeyman. If he wished to assume the responsibility and provide the bond he could qualify as a master. If he wished to assume no responsibilty, provide no bond, and work only under a master plumber who was responsible for his work he could qualify as a jounery-man. We see no denial of the right to work under these provisions of the ordinance.

We find nothing in this ordinance which tends to create a monopoly. Everyone is accorded the privilege of qualifying as a plumber, the only requirements being that the applicants pass the examination and pay the fees required which are not unreasonable.

The judgment appealed from is affirmed.

ROBERTS, P. J., and SMITH and SICKEL, JJ., concur.

LEEDOM, J., dissents.

LEEDOM, Judge (dissenting). I cannot agree with the majority because I believe People v. Brown, 407 Ill. 565, 95 N.E.2d 888, on which we reversed the first Kadinger case is a sound decision. It condemns an arbitrary classification of plumbers under the Illinois law that I am convinced exists under the ordinance here involved, and results in a forced employer-employee relationship between master and journeyman plumbers wholly unwarranted. The very recent case of Schroeder v. Binks, Director of Registration and Education of the State of Illinois, Ill. Supp., 113 N.E.2d 169, confirms this interpretation of People v. Brown.

The Schroeder case, unmistakably it seems to me, holds the Illinois plumber's law unconstitutional on two distinct grounds. The first, and the one that I deem controlling in the case at bar if our court had chosen to follow the Illinois court, is the classification of equally proficient persons into the two categories of journeymen and master plumbers, restricting the activity of the former to working only under the supervision of the master. The decision of the Illinois court in the Schroeder case on this ground is completely independent of the second ground and the discussion concerning it ends midway in the opinion with the beginning of the paragraph that starts: "People v. Brown did not deal only with the artificial categories of employer and employee which the 1935 act imposed". With that sentence and in the balance of the opinion the Illinois court deals with the second ground of unconstitutionality of the Illinois law, that is, the monopolistic control over the avenues of entry into the plumbing business. It is only with respect to this second ground in the Schroeder case that the distinction made in the majority opinion has any application, the distinction made in the sentence: "The Illinois law required that an applicant for a license as a master plumber must have been licensed as a journeyman for at least one year." Thus the first ground of unconstitutionality in the Schroeder decision following as it does People v. Brown condemns the Sioux Falls ordinance.

It is not clear to me what there is about the status of a master plumber over a journeyman plumber under this ordinance that the majority of the court see as a real protection to public health. As to inspection the journeyman ad-

mittedly does as good work as the master and under the ordinance is responsible for his work. His license may be revoked. His work and a master's as well must be done under the supervision of a plumbing inspector and the cost of inspection is covered by a special fee schedule imposed on a journeyman's and a master's work alike. The introduction of the master plumber into such a scheme as a necessary middleman between his equally capable journeyman and the public seems clearly to me not to be for the benefit of the public's health or safety but rather for the benefit of the master plumber. The justification appearing in the majority opinion for the classification, that is, "* * * the responsibility assumed by the master" seems to me an empty phrase in the light of the actualities of the situation.

The Supreme Court of Michigan in Hench v. Michigan State Plumbing Board, 289 Mich. 108, 286 N.W. 176, 180, took the view now shared by the Illinois court that supervision of all plumbing work by a master plumber was wholly unrelated to public health and safety. In this Michigan decision Chief Justice Butzel wrote a dissent but upon the ground that there is a real distinction in the skills of master and journeymen plumbers, a distinction "which the trade itself has preserved for many years." Insofar as I can ascertain all of the decisions that have justified the various classifications of plumbers have done so on the basis employed by Chief Justice Butzel, that is, a real difference in profiiciency. The Illinois and Michigan courts determined judicially that no longer does a real difference in profiiciency exist. In the case at bar the proponents of the ordinance come into court admitting with respect to journeymen and master plumbers that "Their qualifications are exactly the same * * *". By forsaking the view of the Illinois court on this issue and under this circumstance of admitted equal profiiciency this decision may occupy the novel position of being the only one in the reports justifying two classifications of plumbers admittedly having equal profiiciency in all phases of the trade and business of plumbing. The historic justification for such classification is lacking and in my opinion no other legal justification here exists.

The majority's justification of the classificiation on the

master's assumption of extra responsibility I regard as insupportable. Since the qualifications of the two classes are equal a journeyman's capacity for responsibility is equal to that of a master; but the ordinance denies him the privilege of fully utilizing his capacity unless he pays a $50 master's fee as against $10 for the journeyman's license. Nothing else stands in his way. Actually then the basis of the classification,—the only difference between a journeyman and a master plumber,—is the extra $40, a petty but nonetheless a discriminatory barrier to the journeyman's full enjoyment of his constitutional right to follow his lawful occupation. It seems wholly obvious to me that no group equally qualified in all respects with another group to do certain work, can be lawfully required to pay in the form of a license or any other exaction more than the other group pays for the right to do the same work in the licensed field. My conception of the constitutional right to work includes as an inseparable part, the right to work well, to stand back of and be responsible for what I do and thus and only thus to enjoy the full fruits of my labor. It also includes the right to work carelessly if I choose and escape responsibility for what I do insofar as I am able; but that choice is up to me under the constitution and no government can deny me the right to work well and to enjoy the full benefits resulting therefrom. Thus it may be seen that the responsibility the master plumber enjoys to the exclusion of the journeyman, under the ordinance, is an inseparable part of the constitutional guarantee of the right to work that flows to all our citizens; but as the basis of the classification under the majority opinion it ironically is used as the very justification for the denial of appellant's right to work at full capacity.

I would reverse the judgment.